James PERRY and Wilda Perry,
Appellants-Plaintiffs

v.

NORTHERN INDIANA PUBLIC SER-
VICE COMPANY and Babcock and Wil-
cox Company, Appellees-Defendants.

No. 3–580A146.

Court of Appeals of Indiana,
Fourth District.

March 25, 1982.

Rehearing Denied April 16, 1982.

George Kohl, Marvin Lopata, Raskosky & Kohl, Hammond, for appellants-plaintiffs.

David C. Jensen, Paul A. Rake, Eichhorn, Eichhorn & Link, Hammond, for appellees-defendants.

CONOVER, Judge.

Plaintiffs-appellants James and Wilda Perry appeal a summary judgment granted to defendant-appellee Northern Indiana Public Service Company (NIPSCO). The Perrys claim there are genuine issues of material fact concerning NIPSCO's liability for James' injury, sustained when he fell while working on new construction at a NIPSCO plant.

We affirm in part and reverse in part.

## SCOPE OF REVIEW

The purpose underlying the summary judgment procedure is to terminate those causes of action which have no factual disputes and thus may be determined as a matter of law.[1] However, the summary

---

1. Ind.Rules of Procedure, Trial Rule 56(C) provides in part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

judgment procedure must be applied with caution, so that a party's right to a fair determination of a genuine issue is not jeopardized. *Bassett v. Glock*, (1977) Ind. App., 368 N.E.2d 18.

When reviewing a grant of summary judgment, we must determine whether there is any genuine issue of material fact, and whether the law was correctly applied. *Hale v. Peabody Coal Company*, (1976) 168 Ind.App. 336, 343 N.E.2d 316. The moving party has the burden of establishing that no material facts are in genuine issue. All doubts and inferences are resolved in favor of the non-moving party. *Smith v. P. & B. Corp.*, (1979) Ind.App., 386 N.E.2d 1232. Accordingly, the products of discovery are liberally construed in the non-moving party's favor. *Podgorny v. Great Central Insurance Co.*, (1974) 160 Ind.App. 244, 311 N.E.2d 640.

A fact is material if its resolution is decisive of either the action or a relevant secondary issue. *Lee v. Weston*, (1980) Ind. App., 402 N.E.2d 23. The factual issue is genuine if it cannot be foreclosed by reference to undisputed facts, but rather requires a trier of fact to resolve the opposing parties' differing versions. *Stuteville v. Downing*, (1979) Ind.App., 391 N.E.2d 629.

In a word, we are to reverse if there is any genuine issue for the trier of fact to determine.

## ISSUES

The one issue raised in this appeal is whether the trial court erred in finding as a matter of law that NIPSCO owed James Perry no duty to exercise reasonable care relative to job safety.

## FACTS

On October 8, 1971, NIPSCO entered into a written agreement with Babcock and Wilcox Co. (B&W), one of several contractors engaged by NIPSCO for the erection of certain mechanical equipment at its Michi-

gan City generating station. This contract, numbered W–2497C with its attachments was 102 pages in length. Under it, B&W, acting as one of NIPSCO's subcontractors, was to erect certain mechanical equipment as part of the construction of Unit 12, a new generating unit, at that site.

On April 12, 1972, James Perry (James), one of B&W's welders, was ordered by his foreman to weld metal clips onto a fan housing approximately 20 feet above the ground. He was to do so without using a scaffold or other safety apparatus. When James complained of the danger, his foreman told him that scaffolding could be made for the job but it would take some time to get around to it, he could either do the job or go home.

James then complained about the danger involved to his shop steward and later, to a NIPSCO man in a white hat standing near the place James was to do the welding. He received no help from his shop steward. The NIPSCO man told him, "I have no control over what you do for your contractor, you know." Fully aware of the danger, but in fear of losing his job if he did not perform, James attempted to do the welding as ordered. He fell and was severely injured.

After the Perrys filed suit, the trial court granted NIPSCO's Motion for Summary Judgment, from which the Perrys appeal.

## DISCUSSION AND DECISION

### DUTY OF CARE

Generally, one is not liable for the acts or negligence of another unless the relation of master and servant exists between them. Thus, where a party exercising independent employment causes injury to another, the person employing that party will not be liable in damages for injury resulting from such party's wrongful acts or omissions. *Allison v. Huber, Hunt and Nichols, Inc.*, (1977) 173 Ind.App. 41, 362

file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."

N.E.2d 193. In *Prest-O-Lite Co. v. Skeel*, (1914) 182 Ind. 593, 106 N.E. 365, 367, our Supreme Court said:

"It is well settled that where one lets a contract to another to do a particular work, reserving to himself no control over such work, except the right to require it to conform to a particular standard when completed, he is not liable for the negligence of the party to whom the contract is let. An independent contractor is one exercising an independent employment under a contract to do certain work by his own methods, without subjection to the control of his employer, except as to the product or result of the work. When the person employing may prescribe what shall be done, but not how it is to be done, or who is to do it, the person so employed is a contractor, and not a servant. The fact that the work is to be done under the direction and to the satisfaction of certain persons representing the employer does not render the person contracted with to do the work a servant."

In the years since *Prest-O-Lite*, this Court has recognized five exceptions to this rule, as follows:[2]

"(1) where the contract requires the performance of work intrinsically dangerous;

(2) where a party is by law or contract charged with the specific duty;

(3) where the act will create a nuisance;

(4) where the act to be performed will probably cause injury to others unless due precaution is taken to avoid harm;

(5) where the act to be performed is illegal."

*Denneau v. Indiana & Michigan Elec. Co.*, (1971) 150 Ind.App. 615, 277 N.E.2d 8, 12. These exceptions may not be delegated to an independent contractor. *Cummings v. Hoosier Marine Properties, Inc.*, (1977) 173 Ind.App. 372, 363 N.E.2d 1266. The Perrys raise two of the five recognized exceptions:

(1) the contract required the performance of work that was intrinsically dangerous, and

(2) NIPSCO was charged by contract with the specific duty to provide for safety at the job site.

The Perrys claim the evidence presented to the Court, taken as true, raises a genuine issue of fact requiring jury resolution on each of these issues.

## INTRINSICALLY DANGEROUS WORK

As to the Perrys' first issue, the NIPSCO—B&W contract did not require the performance of work that was inherently or intrinsically dangerous. An instrumentality or undertaking is not intrinsically dangerous if the "risk of injury involved in its use can be eliminated or significantly reduced by taking proper precautions." *Hale v. Peabody Coal Co.*, (1976) 168 Ind. App. 336, 343 N.E.2d 316, 322; *Cummings, supra*, 363 N.E.2d 1275; *Jones v. Indianapolis Power & Light Co.*, (1973) 158 Ind.App. 676, 304 N.E.2d 337, 344. Use of proper scaffolding or other safety equipment would have substantially reduced or eliminated James' risk of injury. There was nothing inherently dangerous in the welding job James was ordered to do by his supervisor.

## SPECIFIC CONTRACTUAL DUTY

The Perrys argue extensively that a duty was imposed upon NIPSCO to supervise compliance with safety procedures at the job site by paragraphs 17 and 19 of Exhibit A to its contract with B&W. Paragraph 17 provided the contractor was to keep its tools, equipment and material, etc., "in such condition that the work can be carried on with safety to employees of Purchaser [NIPSCO] and Contractor [B&W]," and that Contractor would maintain a competent superintendent who was "acceptable to Purchaser and may not be changed except by the request of Purchaser" unless he

---

**2.** They were originally enumerated in *Scott Construction Co. v. Cobb*, (1928) 86 Ind.App. 699, 159 N.E. 763.

was unsatisfactory to Contractor and ceased to be in Contractor's employment.

Paragraph 19 reads as follows:

"19. PURCHASER'S RULES AND REGULATIONS: Contractor shall abide by any and all rules Purchaser may have in effect or hereafter put into effect at the site of the WORK pertaining to workmen, safety, use of cameras, security procedures or requirements, lighting of fires, and to the handling of equipment, materials or any other part of the WORK. If in Purchaser's judgment it is desirable, Contractor shall at Purchaser's request remove any employee from the WORK."

We must do more than read those two paragraphs of the contract, however. As Buchanan, P.J., observed:

"The court in *Prest-O-Lite* also offered the following warning against an overly restrictive contractual analysis in the determination of what form of controls the owner-contractee retained:

'The difference between an independent contractor and a mere servant is not to be determined solely by the pretention (sic) of a certain kind or degree of supervision by the employer. It is to be determined by the contract as a whole,—by its spirit and essence,—and not by the phraseology of the single sentence or paragraph.' (182 Ind. at 598, 106 N.E. at 367)."

*Jones v. Indianapolis Power & Light Co.,* 158 Ind.App. 676, 304 N.E.2d 337, 343. Following the mandate of *Prest-O-Lite*, we have extensively reviewed the 102 pages of contract W–2497C and its attachments to determine its spirit and essence. While it is true the contract reserves certain inspection and testing rights to NIPSCO while construction is in progress, and makes NIPSCO's consulting engineers the final authority for determining controversies which arise regarding the work in addition to the provisions of paragraphs 17 and 19 of Exhibit A, suffice it to say this document is nothing other than a contract between the "owner" (albeit "general contractor") of the Unit 12 project and B&W, its independent contractor.

Exhibit A's first paragraph containing definitions says:

"Contractor [B&W] is an independent contractor and not an agent or employee of Purchaser [NIPSCO] and nothing contained in the Contract shall be construed as inconsistent with that status."

Additionally, no provision of the contract gives NIPSCO the right to control the "manner or means" by which B&W completed its part of the contract, the essential requirement for destruction of the contractee-independent contractor relationship. The rights mentioned above as reserved to NIPSCO do not destroy the relationship. *Prest-O-Lite* authorizes work to be done by the independent contractor "under the direction and to the satisfaction of certain persons representing the employer," without destruction thereof. Specifically, paragraph 17 does *not* authorize NIPSCO to give orders to B&W's superintendent as to the manner or means by which B&W's superintendent shall complete the erection for which the parties contracted. It provides only that he shall be acceptable to NIPSCO. Paragraph 19 merely provides that B&W shall comply with any rules NIPSCO had in effect at the site in several categories, one being safety rules. This provision does not reserve to NIPSCO the control of job site safety for B&W's employees so as to render it liable to the Perrys for James' injuries.

### SAFE PLACE TO WORK

■ The Perrys further argue, however, that NIPSCO as owner of the property was required to furnish James, as B&W's employee, a safe place to work, citing *Mullins v. Easton,* (1978) Ind.App., 376 N.E.2d 1178 and *Funk v. General Motors Corp.,* (1974) 392 Mich. 91, 220 N.W.2d 641 as authority for that statement.

In *Mullins,* a temporary helper sued the landowner for injuries suffered when a roto-rooter machine he was helping to move fell on him. The top step of landowner's back porch moved slightly when he stepped on it causing him to lose his balance. When the helper sued the landowner for negligent maintenance of his property, the trial court

entered summary judgment for the landowner. On appeal, the case was reversed and remanded for trial on the question of whether the landowner had exercised the requisite degree of care owed the helper as a business invitee, an obvious question of fact for jury resolution.

The difference between that case and this one is apparent. James was not injured because of any defects in NIPSCO's premises nor due to NIPSCO's negligent maintenance thereof. As Buchanan, P. J. succinctly stated:

"The law of this state is that a party in the position of [NIPSCO] is obligated to take necessary steps to prevent injury to an independent contractor's employee only when such injury is reasonably forseeable in light of the hazardous nature of instrumentalities *maintained by the party on his premises. . . .*" (emphasis in original)

*Jones v. Indianapolis Power & Light Co.,* *supra,* 304 N.E.2d at 344. The landowner's affirmative duty to invitees was to exercise ordinary care to keep its property in reasonably safe condition coextensive with the purpose and intent of the implied invitation. *Hoosier Cardinal Corp. v. Brizius,* (1964) 136 Ind.App. 363, 199 N.E.2d 481, 485. Although NIPSCO had actual knowledge of the work James had been ordered to perform through its man at the accident scene, it was knowledge shared both with B&W through its foreman and James himself. No latent property defect or negligent property maintenance was involved in this accident. Clearly, NIPSCO as owner of the property breached no duty owing to James under these circumstances. *Jones, supra,* 304 N.E.2d at 344, *Hoosier Cardinal, supra.* While *Funk v. General Motors Corp., supra,* makes interesting reading, that case does not recite the current law of Indiana on this subject.

## LEGAL DUTY ARISING BY LAW

That is not the end of the story, however. The Perrys correctly quote from 21 I.L.E. *Negligence* ¶ 2 (1959) p. 262, which says in part:

"Actionable negligence has three essential elements: (1) A duty imposed by law to do or not to do a certain act. (2) A violation of that duty by an act or omission to act which constitutes a breach of that duty. (3) Injury proximately caused by such breach of duty."

and cite us to *Clyde E. Williams & Assoc., Inc. v. Boatman,* (1978) Ind.App., 375 N.E.2d 1138. That case suggests one who *assumes* supervision of safety at a construction site has a duty to use due care in the enforcement of safety regulations. That assumption created a relationship between Williams and the decedent in that case, an employee of Schmidt Company, and a corresponding duty to him to supervise safety at the project "in the manner of a reasonably prudent man." *Williams, supra,* 375 N.E.2d at 1141.

It is hornbook tort law that absent a special relationship creating a legal duty, one has no obligation to come to the aid of another who is in peril. Restatement (Second) of Torts § 314 (1966) says:

"§ 314. Duty to Act for Protection of others.
The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."

Here, however, it is apparent NIPSCO was not at arm's length with the workmen at the construction site as to safety. A special relationship had been created between NIPSCO and B&W regarding safety of B&W's workmen. Although contract W–2497C did not so provide, NIPSCO had *assumed* the obligation to enforce safety measures at the site, as shown by the Keele and Perry affidavits and other discovery in the record.

NIPSCO held regular safety meetings for employees of sub-contractors, had from as low as 6 to 25 to 30 safety men at the site who had "jurisdiction" of the safety program. The NIPSCO man to whom James complained just prior to his fall had the words "Safety Supervisor" written on his hard hat according to affiant Keele, an employee of another contractor at the site. The safety man did nothing to aid James

until after he fell. At that time Keele heard him say, "Don't touch him. Get an ambulance."

Restatement (Second) of Torts § 324A (1966) says:

"One who undertakes, gratuitously . . . to render services to another which he should recognize as necessary for the protection of a third person . . ., is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

.    .    .    .    .

(b) he has undertaken to perform a duty owed by the other to the third person, . . . ."

Under the contract it clearly was B&W's obligation to institute and maintain a safety program for the protection of its employees while on the job. Although the record is silent as to how it occurred, it is also clear NIPSCO assumed B&W's responsibility for safety at the job site. Thus, Restatement (Second) of Torts § 324A (1966) applies to these facts.

This, of course, is nothing new to our law as shown by the well-reasoned Illinois Supreme Court case of *Nelson v. Union Wire Rope Corp.*, (1964) 31 Ill.2d 69, 199 N.E.2d 769, where Klingbiel, C. J. said:

"Originating with the decision of *Coggs v. Bernard*, 2 Lord Raymond 909, it has come to be a recognized principle that liability can arise from the negligent performance of a voluntary undertaking. In our times, a clear and oft-cited statement of the principle is the language of Justice Cardozo in *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275, 276, 23 A.L.R. 1425, when he said: 'It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.' "

*Nelson, supra,* at 199 N.E.2d 773. That case involved the 6 story drop of a temporary construction hoist at a Florida construction site which killed or severely injured all 19 men aboard. One of the defendants was the general contractor's workmen's compensation and liability insurance carrier who had gratuitously undertaken safety inspections and safety engineering service at the job site. The trial court entered judgment on a verdict rendered against the insurance company upon those facts.

■■■ Indiana recognizes this principle. Young, J. recently said:

"Indiana recognizes that a duty may be imposed upon one *who by affirmative conduct* or agreement *assumes to act, even gratuitously, for another* to exercise care and skill in what he has undertaken. However, in such a case, precisely what has been undertaken must be determined because liability is no broader than the actual duty assumed." (Emphasis supplied.)

*Board of Commissioners of Monroe County v. Hatton*, (1981) Ind.App., 427 N.E.2d 696, 699–700. We note the precise nature of the duties of NIPSCO's employees is in sharp conflict. For example, NIPSCO calls them field engineers and others, including the Perrys, call them safety inspectors. A jury will make that ultimate decision upon trial. We here merely view the evidence and discovery in the light most favorable to the non-moving party, as we are required to do when reviewing the entry of summary judgment.

## OTHER JURY QUESTIONS

On trial, it is for a properly instructed jury to determine the nature of NIPSCO's undertaking, if any, its duty to James, if any, and the usual questions of proximate cause and assumption of risk. *Hundt v. LaCrosse Grain Co., Inc.*, (1981) Ind.App., 425 N.E.2d 687, 700–701.

In accordance with Ind. Rules of Procedure, Appellate Rule 15(N) the judgment of the trial court is sustained as to all issues except those pertaining to NIPSCO's assumption of job site safety. As to that issue, the judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion on that issue only.

MILLER, P. J. and YOUNG, J., concur.