19 F.3d 365
 Wayne DAVIS, Plaintiff-Appellant,
v.
HOOSIER ENERGY RURAL ELECTRIC COOPERATIVE, INC.,
Defendant-Appellee, Third Party Plaintiff-Cross Appellant,
v.
EFFINGHAM SEWER SERVICE, INC., Third Party Defendant-Cross Appellee.
 Nos. 93-1250, 93-1354.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 27, 1993.
Decided March 22, 1994.
 
 1
 Stephen L. Williams, Max Goodwin (argued), Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, IN, for plaintiff-appellant, Wayne Davis in No. 93-1250.
 
 
 2
 Max Goodwin (argued), Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, IN, Michael D. Ryan, Ryan, Bennett & Radloff, Mattoon, IL, for Wayne Davis in No. 93-1354.
 
 
 3
 Curt J. Angermeier (argued), Evansville, IN, for Hoosier Energy Rural Elec. Co-op, Inc.
 
 
 4
 Jordan D. Lewis (argued), Lewis & Lewis, Terre Haute, IN, for Effingham Sewer Service, Inc.
 
 
 5
 Before CUMMINGS and ROVNER, Circuit Judges, and GRANT, District Judge.[1]
 
 
 6
 GRANT, District Judge.
 
 
 7
 Plaintiff Wayne Davis is employed by Effingham Sewer Service, Inc. ("Effingham"), an independent contractor which performs cleaning services for Hoosier Energy Rural Electric Cooperative, Inc. ("Hoosier Energy") pursuant to a service contract dated January 3, 1989. On October 10, 1989, Davis fell from a ladder while working at Hoosier Energy's Merom, Indiana power plant and sustained personal injury. He subsequently filed suit in federal district court contending that his injuries were proximately caused by the negligent actions, or inaction, of Hoosier Energy.[2] Hoosier Energy filed a third-party complaint for indemnity against Effingham on the basis of its service contract. Following a two-day bench trial, Magistrate Judge William Hussmann held that Hoosier Energy had no common law, statutory or contractual duty to provide a safe work place for Davis and entered judgment for Hoosier Energy on Davis' negligence claim. The Magistrate thereafter dismissed Hoosier Energy's third-party indemnification claim as moot. Both Davis and Hoosier Energy appeal from the judgment. For the following reasons, we now affirm in part, and reverse in part.
 
 I. BACKGROUND
 
 8
 In January 1989, Effingham contracted with Hoosier Energy to perform cleaning and vacuuming services for its Merom, Indiana power plant. During the plant's routine maintenance shut downs, Effingham would be called in to clean the precipitator hoppers which were used in Hoosier Energy's pollution control system. Fly-ash accumulates in the hoppers in varying amounts, and must be removed if the pollution control system is to operate effectively. When the system that removes the fly-ash fails to operate as designed, large amounts of ash may accumulate in the hopper. This condition is known as a "high ash" hopper.
 
 
 9
 There are several methods of cleaning a high ash hopper. It can be cleaned through one of several port holes by vacuuming from the top of the hopper, by using a rod to route out the ash through an open port, or by opening one of two doors on the hopper and letting the ash vent into the room and then vacuuming the room. A high ash hopper can be dangerous if proper safety precautions are not taken because the ash in the hopper may be backed up in large quantities, it can be hot, and it can flow "almost like a liquid" when the door to the hopper is open. Pursuant to the plant's safety regulations, only employees of Hoosier Energy are allowed to open the doors.
 
 
 10
 On October 10, 1989, a high ash condition existed in hopper C-6 at the Merom plant. Pursuant to a service order dated September 19, 1989 and amended October 3, 1989, Effingham was hired to clean that, and other hoppers, at the plant. All Effingham employees who were present on October 10, including Mr. Davis, were aware of the condition of the hopper and the dangers it posed.
 
 
 11
 Effingham employees first attempted to remove the high ash in hopper C-6 by conventional methods of vacuuming through a port, pounding on the hopper with poles, and routing the hopper through the ports. When those efforts proved unsuccessful, Richard Cox, the Effingham foreman, asked Davis and the other crew members for suggestions. Two methods of clearing the ash were discussed. One of those methods included taking a vacuum hose over the top of the precipitator hopper and vacuuming out the ash from the top. The second method included opening the door to the hopper and allowing the ash to be dumped. Cox rejected the "over the top" method proposed by Davis and other employees, and elected to empty the hopper through the hopper door. Cox accordingly met with Darrell Bayless, a supervisor at Hoosier Energy, and asked him to open the interior door to the hopper and allow the ash to be dumped to evacuate the high ash situation. Bayless acquiesced in Cox's request, and cleared the building of all personnel, except for the Hoosier Energy employees needed for the job. When the door was opened a large amount of ash flowed onto the floor for a period of approximately four to five minutes. Bayless then went to a catwalk where he could see into the precipitator hopper, and saw that a large amount of ash still remained inside. Bayless, however, took no further action because Cox told him he could handle it from there. Cox subsequently caused a ladder to be brought from another area of the Hoosier plant and set up below the hopper door. Cox himself attempted to clear the remaining high ash by beating on the side of the hopper. A small amount of ash was dislodged at that time, and Cox went to start the vacuum truck. When Cox left, Davis ascended the ladder and attempted to dislodge the remaining ash. After two or three attempts, the ash poured out of the hopper, knocking Davis off of the ladder. As a result, Davis suffered two broken heels and was nearly suffocated by the ash. This lawsuit followed.
 
 
 12
 Magistrate Hussmann concluded on the basis of these facts and on his understanding of prevailing Indiana law that Hoosier Energy owed no duty to make its premises reasonably safe for Mr. Davis because the dangerous instrumentality which caused his injury was in Effingham's physical control when the accident occurred, and Hoosier Energy had not voluntarily, or by contract or statute, assumed a duty to provide for the safety of Effingham's employees.
 
 II. DISCUSSION
 A. The Negligence Claim
 
 13
 In Indiana, a claim of negligence is comprised of three elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) an injury to the plaintiff which was proximately caused by the breach. Cowe by Cowe v. Forum Group, Inc., 575 N.E.2d 630, 636 (Ind.1991); Douglass v. Irvin, 549 N.E.2d 368, 369 (Ind.1990). Davis contends that Hoosier Energy had a duty to provide for his safety and that it breached that duty when it failed to require the use of safety equipment in cleaning the hoppers. We disagree.
 
 
 14
 As a general rule, "one is not liable for the acts or negligence of another unless the relation of master and servant exists between them." Johns v. New York Blower Co., 442 N.E.2d 382, 384 (Ind.App. 3 Dist.1982) (quoting Perry v. Northern Indiana Public Service Co., 433 N.E.2d 44, 46 (Ind.App. 4 Dist.1982)). "Thus, where a party exercising independent employment causes injury to another, the person employing that party will not be liable in damages for injury resulting from such party's wrongful acts or omissions." Id. There are, however, judicially recognized exceptions to the rule:
 
 
 15
 (1) where the contract requires the performance of work intrinsically dangerous;
 
 
 16
 (2) where a party is by law or contract charged with the specific duty;
 
 
 17
 (3) where the act will create a nuisance;(4) where the act to be performed will probably cause injury to others unless due precaution is taken to avoid harm; [and]
 
 
 18
 (5) where the act to be performed is illegal.
 
 
 19
 Jones v. Indianapolis Power & Light Co., 158 Ind.App. 676, 304 N.E.2d 337, 343-44 (Ind.App. 2 Dist.1973); Denneau v. Indiana & Michigan Electric Co., 150 Ind.App. 615, 277 N.E.2d 8, 12 (Ind.App.1971). Mr. Davis generally contends that exceptions (1), (2) and (5) were applicable in his case. Our review of the facts and governing law in this case suggests otherwise.
 
 
 20
 1. The Intrinsically Dangerous Work Exception
 
 
 21
 Several recent decisions by the Indiana Court of Appeals have held that the intrinsically dangerous work exception does not extend to employees of an independent contractor performing the work. See Bogard v. Mac's Restaurant, Inc., 530 N.E.2d 776, 779 (Ind.App. 1 Dist.1988), trans. denied (July 27, 1989); Texas Eastern Transmission Corp. v. Seymour National Bank, 451 N.E.2d 698, 699 (Ind.App. 1 Dist.1983); Johns, 442 N.E.2d at 388. Even if we were to assume for the sake of argument that the exception applied to Mr. Davis, the undisputed facts show that the instrumentality which allegedly caused Mr. Davis' injuries was not "intrinsically" or "inherently" dangerous.
 
 
 22
 Intrinsic or inherent danger possesses a special meaning in the law. It cannot be used to describe circumstances and conditions which are not natural, ever-present components of the instrumentality itself, but are merely dangers arising from casual or collateral negligence of others.
 
 
 23
 Jones, 304 N.E.2d at 344. See also, Cummings v. Hoosier Marine Properties, Inc., 173 Ind.App. 372, 363 N.E.2d 1266, 1275 (Ind.App. 3 Dist.1977) ("inherently dangerous means that the danger exists in the doing of the activity regardless of the method used ").
 
 
 24
 [A]n instrumentality is not considered intrinsically dangerous if the risk of injury involved in its use can be eliminated or significantly reduced by taking proper precautions.
 
 
 25
 Hale v. Peabody Coal Co., 168 Ind.App. 336, 343 N.E.2d 316, 322 (Ind.App. 1 Dist.1976); see also Johns, 442 N.E.2d at 386; Perry, 433 N.E.2d at 47.
 
 
 26
 The high ash condition which existed in hopper C-6 was neither a "natural" nor "ever-present" component of the hopper. It was the method Mr. Davis used to clean the hopper which was dangerous. The undisputed evidence shows that any risk of injury could have been eliminated or significantly reduced by taking proper precautions, and that any danger attending the work was the casual or collateral negligence of others.
 
 2. A Legal or Contractual Duty
 
 27
 The district court found that Hoosier Energy owed no duty to Mr. Davis under the law or under Effingham's service contract. We agree in part, and find ample support in the record to affirm the district court's dismissal of Mr. Davis' negligence claim in its entirety.
 
 
 28
 As a landowner, Hoosier Energy does have a duty to exercise ordinary care to keep its property in a reasonably safe condition for business invitees, including the employees of independent contractors. McClure v. Strother, 570 N.E.2d 1319, 1321 (Ind.App. 1 Dist.1991); Douglass, 549 N.E.2d at 369; Wingett v. Teledyne Industries, Inc., 479 N.E.2d 51, 54 (Ind.1985), overruled on other grounds, Douglass v. Irvin, 549 N.E.2d 368 (Ind.1990). It does not, however, have a duty to provide Effingham employees with the same type of safe workplace that it must furnish its own employees in the absence of a contractual or statutory provision to the contrary. Lostumbo v. Bethlehem Steel, Inc., 797 F.Supp. 652, 655 (N.D.Ill.1992), aff'd, 8 F.3d 569 (7th Cir.1993); McClure, 570 N.E.2d at 1321; Howard v. H.J. Ricks Construction Co., 509 N.E.2d 201, 205 (Ind.App. 4 Dist.1987), trans. denied (Dec. 17, 1987).
 
 
 29
 Under the common law, when a dangerous condition exists on the property of which the landowner is aware and which is not likely to be discovered by an invitee, the landowner has a duty to either warn the invitee of the condition or to take precautions to protect the invitee from the known dangers. Merritt v. Bethlehem Steel Corp., 875 F.2d 603, 605 (7th Cir.1989); Bogard, 530 N.E.2d at 777; Louisville Cement Co. v. Mumaw, 448 N.E.2d 1219, 1221 (Ind.App. 4 Dist.1983). Until recently, however, the law in Indiana was somewhat unsettled as to what duty, if any, a landowner owed when the invitee was aware of a dangerous condition on the premises. Several earlier decisions held that the landowner owed no duty to an invitee unless its knowledge of the danger was superior to that of the invitee. See Wingett, supra; Curl v. Bethlehem Steel Corp., 181 Ind.App. 132, 390 N.E.2d 709 (Ind.App. 3 Dist.1979), overruled by, Douglass v. Irvin, 549 N.E.2d 368 (Ind.1990). The law has since been clarified to comport with the prevailing view expressed in sections 343 and 343 A(1) of the Restatement (Second) of Torts which provide:
 
 Section 343
 
 30
 A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.
 
 Section 343 A
 
 31
 (1) A possessor of land is not liable to his invitees for physical harm caused to them by an activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.
 
 
 32
 (Emphasis added). See Get-N-Go, Inc. v. Markins, 544 N.E.2d 484, 487 (Ind.1989) (duty owed by commercial business to its customers "not extinguished by the knowledge of its customers concerning potential risks on the premises"); Douglass, 549 N.E.2d at 370 ("comparative knowledge of landowner and invitee is not a factor in assessing whether the duty exists"). Thus, as Hoosier Energy appears to concede, the issue before this court is not whether it owed a common law duty to keep its premises in a reasonably safe condition for Mr. Davis and other Effingham employees, but whether it breached that duty. It contends that it did not. We agree.
 
 
 33
 Under prevailing Indiana law, Hoosier Energy is liable for Mr. Davis' injuries only if it was reasonably foreseeable that he would fail to protect himself against injury. In determining whether the events of October 10, 1989 were foreseeable, we must consider the circumstances surrounding the invitation, H.J. Ricks Construction Co., 509 N.E.2d at 205; Hoosier Cardinal Corp. v. Brizius, 136 Ind.App. 363, 199 N.E.2d 481, 487 (1964), and the comparative knowledge of the parties involved. Douglass, 549 N.E.2d at 370. The undisputed facts indicate that Effingham had performed cleaning services for Hoosier Energy for at least five years prior to the date of the accident, that Effingham and its employees were invited onto the property for the express purpose of cleaning the precipitator hoppers, and that Mr. Davis had actual knowledge of the condition of the hopper and the dangers it posed. Mr. Davis also knew that the risk of danger could have been eliminated or substantially reduced by taking proper precautions and that safety equipment (i.e., a scaffolding and safety harness) was available for his use; he had but merely to ask or go to the truck and obtain it himself. Despite this knowledge, Mr. Davis failed to take reasonable safety precautions, proceeded up the ladder which Mr. Cox had placed in front of the hopper, and began to pound on the hopper until the ash poured out and knocked him to the floor. That Hoosier Energy could not have foreseen such events cannot be disputed given the comparable knowledge of the parties, the nature of its invitation and the conditions under which it was extended, and the use of the premises which was to be made. Under the circumstances, Hoosier Energy cannot be held liable to Mr. Davis for physical harm caused by his failure to protect himself from known dangers unless it voluntarily assumed responsibility for safety regulation compliance, or was required by law to do so. The district court found that it had not, and we agree.
 
 
 34
 Although Ken McDonald and Darrell Bayless, both supervisors for Hoosier Energy, met with Effingham's foreman during the course of the work day to discuss what work was to be done, they did not dictate the methods which Effingham used to do the work and were not present while the work was being performed. Indeed, the contract between Effingham and Hoosier Energy evidenced a clear intent to place responsibility for the method and manner of the work to be performed upon Effingham (the "contractor") and provided in pertinent part:
 
 
 35
 1. The Contractor will furnish supervision, craft labor, tools, equipment, material, and other services appropriately covered by this contract. The Contractor will complete this contract in a workman like manner, in the time hereinafter specified, and in accordance with the terms, conditions and provisions of this Contract.
 
 
 36
 * * * * * *
 
 
 37
 4. Contractor shall comply with all federal, state, and local governmental regulations.
 
 
 38
 * * * * * *
 
 
 39
 8. Contractor will discuss prior to commencement of work and comply with Owner's safety rules and regulations while on work site.
 
 
 40
 As the district court correctly pointed out, the mere retention of a right to require compliance with federal, state and local safety laws in the contract between the parties does not, in and of itself, constitute an assumption of the duty of safety, Merritt, 875 F.2d at 607-609; Alexander v. City of Shelbyville, 575 N.E.2d 1058, 1060 (Ind.App. 1 Dist.1991); Phillips v. United Engineers & Constructors, Inc., 500 N.E.2d 1265, 1268 (Ind.App. 1 Dist.1986); Perry, 433 N.E.2d at 48, and neither I.C. 22-1-1-10, nor OSHA, provide a viable basis for expanding Hoosier Energy's general duty of care. See Mason v. Ashland Exploration, Inc., 965 F.2d 1421, 1425 (7th Cir.1992); Merritt, 875 F.2d at 608-09; Robinson v. Kinnick, 548 N.E.2d 1167, 1170-71 (Ind.App. 1 Dist.1989), trans. denied (May 17, 1990); Phillips, 500 N.E.2d at 1268.[3]
 
 B. The Indemnification Claim
 
 41
 The service contract between Hoosier Energy and Effingham also contained the following indemnification provision:
 
 
 42
 7. Contractor assumes all responsibility and liability for personal injuries ... Contractor will indemnify the Owner and hold the Owner forever free and harmless against and from all loss, damages, costs, expenses (including legal fees) and liability arising out of or touching upon the matters and things with respect to which Contractor has assumed responsibility and liability hereunder ...
 
 
 43
 In its cross-appeal, Hoosier Energy contends that its right to indemnification was thus not limited to damages, but included the right to recover attorney's fees and costs expended in defending against Davis' lawsuit, and that the Magistrate erred in dismissing its third-party complaint as moot. We agree.
 
 
 44
 The law in Indiana is well-established: "An indemnitee who incurs legal expenses through defending an action against him for which he is entitled to indemnification may recover the expenses of maintaining the defense, including reasonable attorney's fees." Essex Group, Inc. v. Nill, 594 N.E.2d 503, 507-08 (Ind.App. 3 Dist.1992); see also Zebrowski and Assoc., Inc. v. City of Indianapolis, 457 N.E.2d 259, 264 (Ind.App. 1 Dist.1983). Contrary to Effingham's argument on appeal, such a provision is not void as a matter of public policy. "In the absence of prohibitive legislation, there is ordinarily no public policy which prevents parties from contracting as they desire." Ogilvie v. Steele, 452 N.E.2d 167, 170 (Ind.App. 3 Dist.1983); see also Moore Heating & Plumbing, Inc. v. Huber, Hunt & Nichols, 583 N.E.2d 142, 145 (Ind.App. 1 Dist.1991); LaFrenz v. Lake County Fair Board, 172 Ind.App. 389, 360 N.E.2d 605, 607 (3 Dist.1977). Effingham's reliance on I.C. 26-2-5-1 as authority for voiding the indemnification provision is misplaced. I.C. 26-2-5-1 applies to construction and design contracts.[4] Effingham does not contend, nor does the evidence show, that its contract with Hoosier Energy falls within the terms of that statute.[5]
 
 III. CONCLUSIONS
 
 45
 Accordingly, we AFFIRM the judgment in favor of Hoosier Energy and against Davis on his personal injury claim, REVERSE the judgment for Effingham on Hoosier Energy's third-party claim for indemnification, and REMAND for further proceedings to determine the amount of indemnity.
 
 
 
 [1]
 The Honorable Robert A. Grant, District Judge, United States District Court for the Northern District of Indiana, is sitting by designation
 
 
 [2]
 Jurisdiction is premised on diversity of citizenship. Indiana's substantive law applies
 
 
 [3]
 I.C. 22-1-1-10 provides:
 Safe place to work
 Every employer and place of employment under the jurisdiction of the department of labor created by this chapter shall:
 (1) furnish employment that is safe for the employees therein;
 (2) furnish and use safety devices, safeguards, methods, and processes reasonably adequate to render employment and place of employment safe; and
 (3) do every other thing reasonably necessary to protect the safety of the employee.
 
 
 [4]
 I.C. 26-2-5-1 provides:
 All provisions, clauses, covenants, or agreements contained in, collateral to, or affecting any construction or design contract except those pertaining to highway contracts, which purport to indemnify the promisee against liability for:
 (1) death or bodily injury to person;
 (2) injury to property;
 (3) design defects; or
 (4) any other loss, damage or expense arising under either (1), (2) or (3);
 from the sole negligence or willful misconduct of the promisee or the promisee's agent, servants or independent contractors who are directly responsible to the promisee are against public policy and are void and unenforceable.
 
 
 [5]
 Even if we were to assume that I.C. 26-2-5-1 were applicable, it would not render the indemnification provision in the present contract void and unenforceable. The statute prohibits a party to a construction contract from requiring indemnification for its sole negligence. Hoosier Energy is not seeking indemnification for its negligence. Indeed, the district court found that Hoosier Energy was not negligent. Rather, it seeks indemnification for fees and costs expended in defending against Davis' negligence suit. Such a provision is not prohibited under I.C. 26-2-5-1. See Moore Heating & Plumbing, 583 N.E.2d at 147-48; Alexander, 575 N.E.2d at 1062