William Joseph MARTIN, Joyce Martin, Liberty Mutual, as Indiana Worker's Compensation Benefits Administrator for Select Environmental, Inc. Plaintiffs,

v.

AMERICAN NATIONAL CAN COMPANY, Zapata Envases, Tex–Am International, Inc. and Edward Stotts, Defendants.

No. 2:95–CV–168–RL.

United States District Court,
N.D. Indiana,
Hammond Division.

Aug. 25, 1997.

**1154**

Fred M. Stults, Jr., Stults, Custer & Kutansky, Gary, IN, Timothy O. Malloy, Schreiner and Malloy, P.C., Schererville, IN, for Plaintiffs.

Michael C. Adley, Abrahamson Reed and Adley, Hammond, IN, Michael J. Marovich, Builema Hiskes Dillner O'Donnell & Marovich, Orland Park, IL, William M. Jonelis, Munster, IN, for Defendants.

## ORDER

LOZANO, District Judge.

This matter is before the Court on the Motion for Summary Judgment filed by Defendants, American National Can Company and Edwin Stotts, on January 21, 1997. For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**. The Court **GRANTS** the motion in favor of Stotts, but **DENIES** the motion as to American National Can.

### BACKGROUND

Plaintiff, William Martin ("Martin") was an employee of Select Environmental, Inc. ("Select"), a company that performed asbestos removal at a Hammond plant owned by Defendant, American National Can Company ("ANC"). On his second day at the ANC plant, Martin got injured when a large electrical panel fell on his foot after a co-worker brushed or pushed against it. Martin now sues several Defendants claiming they are liable for his injuries.

Prior to the accident, ANC had agreed to sell some industrial equipment located in a warehouse at the Hammond plant to Defendant, Zapata Envases, S.A. ("Zapata"). Defendant, Tex–Am International, Inc. ("Tex–Am") acted as a broker between ANC and Zapata. Under the terms of the agreement, Zapata was responsible for removing the equipment from ANC's plant.

At the time that Zapata began removing the equipment the Hammond plant was not in operation. The parties dispute whether there were ANC employees working in the area around the warehouse. ANC did hire Defendant, Edwin Stotts ("Stotts"), as a consultant to monitor the removal of the equipment. Stotts was to make sure that Zapata removed the proper equipment. Neither Stotts nor any other ANC employee directed Zapata on the manner or method to remove the equipment.

When Zapata was removing the equipment, it contaminated the area with asbestos. The Hammond Environmental Management Office shut down the job. It is unclear whether the Environmental Management Office or ANC restricted access to the area. Since Zapata could not continue the removal it left the plant. ANC then hired Select to clean up the asbestos. Neither ANC or Stotts assisted Select in removing the asbestos.

Apparently in the process of removing the equipment, someone had taken the bolts that secured a large electrical panel to the floor. Neither Stotts nor ANC actually knew that the panel was not secured to the ground. On the second day of the asbestos cleaning operations, the panel fell on Martin's foot, injuring him. No one had warned Select or its employees that the panels were unstable and not bolted to the floor.

### DISCUSSION

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if the moving party demonstrates that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In other words, the movant must show that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, a court must read all facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *Nucor Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 583 (7th Cir.1994).

The burden is upon the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,' if any, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. Once the moving party has met this burden, the nonmoving party may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Becker v. Tenenbaum–Hill Assoc., Inc.*, 914

F.2d 107, 110 (7th Cir.1990); *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989). "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir. 1988); *see also Hickey v. A.E. Staley Mfg.,* 995 F.2d 1385, 1391 (7th Cir.1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

## I. *Action against ANC*

### A. Duty

■ The Plaintiff's claim is a claim for negligence. Under Indiana law, a plaintiff must prove three elements to prevail on a negligence action: (1) a duty on the part of the defendant in relation to the plaintiff; (2) a breach of duty, that is, a failure of the defendant to conform its conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff proximately caused by the breach. *Davis v. Hoosier Energy Rural Electric Cooperative, Inc.,* 19 F.3d 365, 367 (7th Cir.1994); *Douglass v. Irvin,* 549 N.E.2d 368, 369 (Ind.1990). Whether a duty exists is a question of law determined by the court based on the relationship of the parties. *Lostumbo v. Bethlehem Steel, Inc.,* 797 F.Supp. 652, 655

(N.D.Ill.1992), aff'd, 8 F.3d 569 (7th Cir. 1993); *Douglass,* 549 N.E.2d at 369.[1]

■ ANC first argues that it owed no duty to the Plaintiff because it did not control or possess the area where Martin got injured. Absent a duty, the Plaintiff cannot succeed against ANC. *See Robinson v. Kinnick,* 548 N.E.2d 1167, 1168 (Ind.Ct.App. 1989).

■ Generally, a property owner is under no duty to provide independent contractors with a safe place to work. *Lostumbo,* 797 F.Supp. at 655; *Ozinga Transp. Sys., Inc. v. Michigan Ash Sales, Inc.,* 676 N.E.2d 379, 384 (Ind.Ct.App.1997). Martin does not argue, and there is no evidence before the Court to suggest that ANC assumed the duty of providing a safe workplace to the Select's employees.

■ Nonetheless, a property owner has duty, applicable to independent contractors, to keep its premises reasonably safe. *Bateman v. Central Foundry Division General Motors Corp.,* 992 F.2d 722, 726 (7th Cir. 1993) *Lostumbo,* 797 F.Supp. at 655; *Ozinga Transp. Sys.,* 676 N.E.2d at 384. This duty is distinct from providing a safe workplace to the employees of a contractor. *Bateman,* 992 F.2d at 726. The Indiana Supreme Court adopted the definition of premises liability as expressed in Section 343 of the Restatement (Second) of Torts:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

*Douglass,* 549 N.E.2d at 370; *see also Davis,* 19 F.3d at 369; *Ooms v. USX Corp.,* 661

---

1. The *Douglass* court recognized, however, that the determination of whether a relationship between the parties exists that gives rise to a duty may implicate questions of fact. In that case the ultimate existence of a duty becomes a mixed question of law and fact. 549 N.E.2d at 369 n. 1; *see also Northern Indiana Public Service Co. v. East Chicago Sanitary District,* 590 N.E.2d 1067, 1072 (Ind.Ct.App.1992)

N.E.2d 1250, 1253 (Ind.Ct.App.1996). The duty applies even when the knowledge of the owner about the dangerous conditions in its premises is not superior to that of the invitee. *Davis,* 19 F.3d at 369; *Douglass,* 549 N.E.2d at 370–71.

In the case at hand, ANC claims that it is not the possessor or occupier of the area where Martin got hurt. If ANC is not the possessor of that area, then it does not have a duty to keep the area in a reasonably safe condition for the benefit of the Plaintiff.

 A possessor or occupier of land is (a) a person who is in occupation of the land with intent to control it or

(b) a person who has been in occupation of land with intent to control it, if not other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) or (b).

*Risk v. Schilling,* 569 N.E.2d 646, 647 (Ind. 1991) (citing Restatement (2d) of Torts § 328 E). The person who controls the land can remedy any hazardous condition and has the right to prevent other from entering the land; therefore the law imposes on the possessor the duty keep the land safe for invitees. City of *Bloomington v. Kuruzovich,* 517 N.E.2d 408, 411 (Ind.Ct.App.1987). The owner of the land is not necessarily the occupier/possessor of the land. *Risk,* 569 N.E.2d at 647. Who is a possessor is a question of fact involving occupation and intent to control the particular area where the injury occurred. *Crist v. K–Mart Corp.,* 653 N.E.2d 140, 145 (Ind.Ct.App.1995)

ANC argues that despite being the owner of the warehouse where the injury took place, it was not in control and possession of that area. It claims that Zapata assumed control and possession of the area during its work there, followed by Select, which assumed control and possession during the asbestos removal operations.

Despite ANC' argument, the facts before the Court indicate that the only possessor of the premises in question has been ANC, even during the times that Zapata and Select were working in the warehouse. The cases that ANC cites to support its contention that the owner of the land is not necessarily the possessor of the land refer mostly to cases involving land leased to tenants, see, *e.g., Rogers v. Grunden,* 589 N.E.2d 248 (Ind.Ct.App. 1992); *Hodge v. Nor–Cen, Inc.,* 527 N.E.2d 1157 (Ind.Ct.App.1988), or where the premises in question were not occupied or controlled by owner but instead where occupied and controlled by a third person on a permanent basis, *see Risk,* 569 N.E.2d 646. In contrast, in cases where the owner of the land permits an independent contractor to come its land to perform work there, the Indiana courts have found that the contractor is not in control of that land. *See, e.g., Duffy v. Ben Dee, Inc.,* 651 N.E.2d 320 (Ind.Ct.App. 1995); *Woods v. Qual–Craft Indus., Inc.,* 648 N.E.2d 1198 (Ind.Ct.App.1995).

In *Duffy,* the defendant was a contractor hired to perform construction on a bridge owned by a third party. The *Duffy* court found that the defendant was itself an invitee that had no legal interest in the land and had no duty to maintain the land in a safe condition. 651 N.E.2d at 323. In *Woods,* the defendant was one of several subcontractors at a construction site. The *Woods* court found that the fact that the defendant was on the land to perform its work did not make it a land occupier subject to premises liability. 648 N.E.2d at 1201. The court clarified that it is the landowner who has the common law duty of keeping its premises safe for invitees. *Id.; see also Wingett v. Teledyne Indus., Inc.,* 479 N.E.2d 51, 53, 54 (Ind.1985) (finding that the landowner had a duty to keep its property safe even when the independent contractor was in complete control of the worksite at the time the contractor was working there), *overruled in part on other grounds by Douglass,* 549 N.E.2d 368.

*Duffy* and *Woods* are more applicable to case at hand than the landlord-tenant cases that ANC cites, or than the case where the occupier of the land, not the owner, set a permanent workshop on the land, *see Risk,* 569 N.E.2d 646. Both Zapata and Select came into ANC land with the permission of the latter to perform a definite task, without asserting a claim on the land. Although Zapata may have not been employed by

ANC, its purpose on ANC land was more analogous to that of an independent contractor than to that of a tenant. It came to the warehouse to dismantle and remove some equipment it purchased from ANC. Apart from its claim to the equipment, it asserted no interest or control on the land, and its presence there was the minimum necessary to enable it to remove the equipment.

Select was clearly an independent contractor employed by ANC, present at the site only to clean up asbestos, without any claim to the land. The fact that Select may have restricted access to the area to prevent exposure to asbestos does not mean that it asserted control over the land, considering that restricting exposure to asbestos was part of its responsibility in removing the danger created by asbestos in the ANC warehouse.

▪ Because ANC was the possessor of the premises where Martin was working, ANC owed him the duty keep the premises in safe condition. ANC had to exercise reasonable care to protect Martin from dangerous conditions on the premises known to ANC or which ANC would have discovered with the exercise of reasonable care, and which ANC should have expected that Martin would not discovered.

▪ ANC argues, however, that even if Martin was working in premises owned and controlled by ANC, ANC is not liable to Martin because he was injured by a instrumentality which was controlled Zapata. ANC cites law stating that when the instrumentality causing the injury is in the control of an independent contractor, the landowner owes no duty to the contractor's employees, unless the landowner assumed control of the instrumentality. *See Bethlehem Steel Corp. v. Lohman,* 661 N.E.2d 554, 556 (Ind.Ct.App. 1995); *Howard v. H.J. Ricks Construction*

*Co., Inc.,* 509 N.E.2d 201, 205 (Ind.Ct.App. 1987); *Plan–Tec, Inc. v. Wiggins,* 443 N.E.2d 1212, 1219 (Ind.Ct.App.1983).[2]

Assuming that this doctrine applies to the case at hand and that the electric panel had been controlled by Zapata when Zapata was working at the site, the Court cannot grant summary judgment because there are genuine issues of fact as to whether ANC assumed control over the electric panels after Zapata left and before the asbestos cleanup began. A landowner who takes control over a contractor's instrumentality is in a position analogous to that of the landowner who maintains a hazardous instrumentality in its premises. *McClure v. Strother,* 570 N.E.2d 1319, 1323 (Ind.Ct.App.1991).

After the area was contaminated with asbestos, ANC wrote a telefax to Tex–Am, who had negotiated the sale of the equipment between ANC and Zapata, warning Tex–Am that ANC would not release any additional equipment to Zapata until Tex–Am or Zapata reimbursed ANC for the cost of the asbestos cleanup. *See Pl.'s* Exh. 5 It appears from that letter that ANC was in control of the equipment left at the ANC warehouse, and that therefore ANC was the entity who was in the position to prevent any injuries caused by dangerous equipment. Because there is a genuine issue of fact as to whether ANC assumed control over what used to be Zapata's instrumentality, so as to make ANC liable for injuries caused by such instrumentality, the Court cannot grant summary judgment in favor of ANC on this matter.

▪ The Court clarifies that ANC cannot apply this doctrine on instrumentalities controlled by independent contractors to excuse itself from its duty under premises liability. Even if Martin does not succeed in showing that ANC assumed control over the electrical

---

2. Before *Douglass,* 549 N.E.2d 368, the courts would also hold an owner liable for injuries caused by an instrumentality controlled by an independent contractor when the owner had superior knowledge of the potential danger involved in the operation of the instrumentality. However, the appellate court in *McClure v. Strother,* 570 N.E.2d 1319, 1323 (Ind.Ct.App. 1991), questioned whether this exception is valid in light of *Douglass. But see Bethlehem Steel Corp.,* 661 N.E.2d at 556 (stating that an owner would be liable for injuries caused by an instrumentality in control of the independent contractor if the owner had superior knowledge of the dangers involved); *Riffle v. Knecht Excavating, Inc.,* 647 N.E.2d 334, 338 (Ind.Ct.App.1995) (same). Because there is no evidence that ANC had actual superior knowledge of the condition of the electrical panel, this exception, even if still viable under Indiana law, does not apply to the case at hand.

panel after Zapata left, he can still attempt to hold ANC liable under the premises liability doctrine.

In most of the cases cited by the Defendant where the doctrine of instrumentalities controlled by independent contractors excused the owner from premises liability, the plaintiff was the employee of the independent contractor who controlled the instrumentality. *See, e.g., Bateman,* 992 F.2d 722 (where the plaintiff was injured in a hole dug and controlled by her employer); *Bethlehem Steel Corp.,* 661 N.E.2d 554 (where the plaintiff's employer controlled and maintained the crane which injured the plaintiff); *Riffle v. Knecht Excavating, Inc.,* 647 N.E.2d 334 (Ind.Ct.App.1995) (where the plaintiff was injured in a hole dug and controlled by his employer); *Plan–Tec,* 443 N.E.2d 1212 (where the plaintiff was injured when a scaffold belonging to his employer fell); *Hale v. Peabody Coal Co.,* 168 Ind.App. 336, 343 N.E.2d 316 (1976) (where the plaintiff was injured when a scaffold owned by his employer fell). Several of the cases specify that the fact that an independent contractor controls the instrumentality will excuse the landowner from liability towards that contractor's employees. *See Bethlehem Steel Corp.,* 661 N.E.2d at 556 ("[W]here the instrumentality causing the injury is in the control of the independent contractor, … the landowner owes no duty to *the contractor's* employees.") (emphasis added); *Riffle,* 647 N.E.2d at 338 ("When the injury is caused by a dangerous instrumentality controlled by a contractor, a property owner generally owes no duty to the *contractor's employees.*") (emphasis added); *see also Bateman,* 992 F.2d at 727 (stating that the doctrine applies to instrumentalities "within the control of the independent contractor for *the sole use* of its employees.") (emphasis added); Hale, 343 N.E.2d at 325 (stating that the doctrine applies to instrumentalities "within the sole control of the independent contractor *for the exclusive use* of the contractor's employees.") (emphasis added). In this case, the instrumentality that caused injury to the Plaintiff was not under the control of Select. The cases cited would limit ANC's liability if one of Zapata's employee would have gotten injured, but the law as discussed in these cases do not limit

ANC's liability towards Martin, at least in a case like this one where Zapata, the entity allegedly in control of the instrumentality, had departed from the site and could no longer prevent injury from its instrumentality.

The only case where the plaintiff was injured by an instrumentality which was controlled neither by the landowner nor by the plaintiff's employer is *Howard v. H.J. Ricks Construction Co.,* 509 N.E.2d 201. In *Howard* the plaintiff was injured when he came in contact with some low-hanging electrical wire lines while he was trying to reach the roof of a building owned by the defendant. 509 N.E.2d at 205. The wire lines were controlled neither by the plaintiff's employer, the independent contractor, nor by the landowner, and the *Howard* court refused to hold the owner liable. In that case, however, the electrical wire lines were not within the property of the owner. Premises liability could not serve to hold the owner liable in that case because the lines were not part of the premises. *Id.* In contrast, the injury in the case at hand took place within the premises of ANC, and premises liability applies.

▆ Assuming that the electrical panel fell on Martin because Zapata negligently left it unbolted in an unstable position, ANC will not be liable for Zapata's negligence unless one of several exceptions apply. *See Davis,* 19 F.3d at 368; *Perry v. Northern Indiana Public Service Co.,* 433 N.E.2d 44, 46–47 (Ind.Ct.App.1982). Martin asserts that ANC should be liable for Zapata's negligence because the electrical panel was an intrinsically dangerous instrumentality and because ANC had a legal duty to keep its premises safe.

▆ The Court discussed ANC's duty to keep its premises safe, *supra.* Such duty applies to protect or warn its invitees of dangerous conditions, even if such conditions were created by Zapata. *See, e.g., Davis,* 19 F.3d at 368.'

▆ Martin, however, cannot hold ANC liable for Zapata's negligence based on the argument that the electrical panels were intrinsically dangerous. An instrumentality

cannot be considered intrinsically dangerous if the risk of injury can be significantly reduced by taking proper precautions. *Perry,* 433 N.E.2d at 47; *Hale,* 343 N.E.2d at 322. The risk of injury from unstable electric panels was easily eliminated, after Martin got injured, by Select employees who pushed the panels to the ground. The risk from the panels arose not from some condition natural to the panel, but rather from the negligence of others. *See Hale,* 343 N.E.2d at 322.

In conclusion, the Court cannot find as a matter of law that ANC did not control or possess the premises where Martin got injured. If Martin shows at trial that ANC controlled or possess the warehouse where he got injured, then ANC had a duty to keep the premises where Martin was working when he got injured in reasonably safe conditions. ANC would owed Martin such duty even if Zapata controlled the electrical panel that fell on Martin, or if the panel fell due to Zapata's negligence.

B. Breach

■ Even if ANC had a duty under premises liability to keep its premises safe, ANC would be liable to Martin only if it breached that duty. Whether a breach occurred is a question of fact. *Douglass,* 549 N.E.2d at 370.

■ There is no evidence before the Court that could support a jury finding that ANC knew of the condition of the electrical panel. However, there is a genuine issue of fact as to whether ANC could have discovered the condition of the panel with the exercise of reasonable care. There were several days between the time Zapata left and before Select arrived in which ANC arguably could have inspected the site. The evidence is disputed as to whether people could entered the area contaminated with asbestos and as to whether a person conducting an inspection of the equipment could have detected that the panels were not secured. Therefore, the Court **DENIES** the summary judgment motion as to ANC.

II. *Action against Stotts*

■ Although the action against ANC is based on premises liability, Martin presents no basis for holding Stotts liable. There is no evidence that Stotts possessed or controlled the warehouse. The evidence presented shows that Stotts' only role during the Zapata removal operation was to indicate which equipment Zapata could take. Stotts did not have a duty to make sure that the equipment removal occurred in a safe manner and he did not have a duty to provide safety to the Select employees. Accordingly, the motion for summary judgment is **GRANTED** in favor of Stotts.

*CONCLUSION*

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion for Summary Judgment. The Court **GRANTS** the motion in favor of Defendant, Edwin Stotts, but **DENIES** the motion as to Defendant, American National Can Company.