**Rosario LOSTUMBO, Plaintiff,**

v.

**BETHLEHEM STEEL, INC., a foreign Corporation, Defendant.**

### No. 90 C 6437.

United States District Court, N.D. Illinois, E.D.

Aug. 28, 1992.

John C. Ambrose, Ambrose & Cushing, P.C., Chicago, Ill., for plaintiff.

George W. Gessler, Jonathan A. Rothstein, Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., Chicago, Ill., for defendant.

## ORDER

NORGLE, District Judge.

Before the court is defendant Bethlehem Steel, Inc.'s ("Bethlehem") motion for summary judgment. For reasons that follow, the motion is granted.

## FACTS

Plaintiff Rosario Lostumbo ("Lostumbo") suffered severe knee injuries on November 28, 1988 when he jumped from a scaffold at Bethlehem's Burns Harbor plant in Chesterton, Indiana and fell on his

knees.[1] A veteran pipefitter and welder, Lostumbo was employed by Nuclear Welding, Inc. ("Nuclear"), which had been hired by Bethlehem[2] to do some welding and to inspect the work of another independent contractor, McGraw Construction Company, Inc. ("McGraw"). Bethlehem hired McGraw to perform reline welding on a blast furnace. McGraw was responsible for providing all equipment and material necessary for its task, and for ensuring the safety of its employees. Bethlehem's contract with Nuclear, through Nuclear's affiliate, similarly obligated Nuclear to provide "all necessary labor, material and equipment," but did not mention any safety responsibilities.

McGraw constructed the scaffold[3] at issue, which surrounded the blast furnace about thirty feet above the floor and four feet above a concrete landing. The scaffold consisted of boards placed upon angle irons welded to the outside of the blast furnace. There was no railing or rope barrier on the scaffold, and no ladder or stairs to provide access. After completing an inspection, Lostumbo stepped on an angle iron and jumped to the landing. His foot, however, allegedly caught on a small piece of metal protruding from the angle iron, causing him to land on his knee.

Bethlehem's manager for the project, Earl Jackson, had the right to direct the work of both McGraw and Nuclear to the extent that he, or other Bethlehem employees, told McGraw and Nuclear which work needed to be done and monitored that work to ensure that it met Bethlehem's specifications and timetable. Jackson also had the right to stop the work and to order correction of unsafe conditions. Jackson and Nuclear's project manager, Thomas Juricic, met at least once a week regarding the work to be done and the applicable specifications. Nonetheless, neither Jackson nor any other Bethlehem employees directed Nuclear's actual performance of the work. McGraw had a full-time safety supervisor on the project, but apparently neither Bethlehem nor Nuclear had one.

Lostumbo filed his original complaint on November 5, 1990, and an amended complaint on December 3, 1990 under this court's diversity jurisdiction. 28 U.S.C. § 1332. The single-count amended complaint alleges that Bethlehem negligently failed to erect or maintain a safe scaffolding, and failed to provide a safe workplace for Lostumbo.

Bethlehem, in its motion for summary judgment filed on May 29, 1992, contends that under Indiana law, which controls this case, it had no duty to provide a safe work place to employees of an independent contractor such as Lostumbo. Bethlehem also argues that the undisputed facts establish that it did not breach its sole duty, as a landowner, to warn of latent defects on its property.

## DISCUSSION

 Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, Depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute about a material fact is "genuine" if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d

1. The factual background was drawn from the parties' respective statements of facts filed pursuant to Local Rules 12(m) and 12(n), and unless otherwise noted, are uncontradicted.

2. Bethlehem contracted directly with an affiliate of Nuclear, J.H. Robertson Association, Inc., rather than with Nuclear.

3. Bethlehem contends that McGraw constructed the scaffold, but Lostumbo disputes that assertion, noting that Earl E. Jackson, the Bethlehem construction manager assigned to monitor both McGraw's and Nuclear's work, did not know who constructed the scaffold and no other materials in the record clearly establish that it was McGraw's scaffold. Nonetheless, McGraw's construction of the scaffold is inferable from the provision in its contract requiring it to provide the equipment and materials it needed, particularly in view of the absence of evidence conflicting with that inference.

202 (1986). A plaintiff cannot rest on mere allegations of a claim without any significant probative evidence in support. *Id.* "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the non-moving party must go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. A "scintilla of evidence" is insufficient; the non-movant must offer evidence on which a jury could reasonably find for him. *Brownell v. Figel,* 950 F.2d 1285, 1289 (7th Cir.1991). Nevertheless, in deciding whether any genuine issues of material fact exist, the court must draw all reasonable inferences in the light most favorable to the nonmovant. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

■ The parties agree that Indiana law controls the substantive issues in this case. In Indiana, a claim of negligence comprises three elements: (1) a duty owed by defendant to the plaintiff, (2) a breach of that duty, and (3) an injury to the plaintiff proximately caused by the breach. *Cowe ex rel. Cowe v. Forum Group, Inc.,* 575 N.E.2d 630, 636 (Ind.1991). Generally, Indiana law imposes no duty upon a property owner to provide independent contractors with a safe workplace, although a property owner may be held to have gratuitously assumed such a duty. *McClure v. Strother,* 570 N.E.2d 1319, 1321 (Ind.Ct. App.1991). Nonetheless, a property owner has a duty, applicable to independent contractors, to keep their premises reasonably safe. *Id.* (citing *Wingett v. Teledyne Indus., Inc.,* 479 N.E.2d 51, 54 (Ind.1985), *overruled on other grounds, Douglass v. Irvin,* 549 N.E.2d 368 (Ind.1990)). And a landowner has a general duty to warn independent contractors of latent or concealed dangers on the premises. *Id.* Whether a duty exists is a question of law determined by the court based on the relationship of the parties. *Id.* at 369.

■ An additional showing that a landowner had "superior knowledge" of the dangerous condition, which had been imposed by some Indiana courts to hold the landowner liable, *see, e.g., Wingett,* 479 N.E.2d at 54, is no longer necessary. *Haugh v. Jones & Laughlin Steel Corp.,* 949 F.2d 914, 919 (7th Cir.1991); *Douglass,* 549 N.E.2d at 371; *McClure,* 570 N.E.2d at 1322–23. Nevertheless, "[w]hile the comparative knowledge of landowner and invitee is not a factor in assessing whether the duty exists, it is properly taken into consideration in determining whether such a duty was breached." *Douglass,* 549 N.E.2d at 370. A landowner's superior knowledge of a dangerous condition may be insufficient to prove that he breached his duty, however, if the landowner "could reasonably expect the invitee to discover, realize, and avoid such risk...." *Id.* Once a duty has been found, it is a factual question whether the duty has been breached. *Id.*

■ First, the court finds that Bethlehem's only duty to Nuclear and Nuclear's employees was to keep the premises in a reasonably safe condition. Bethlehem did not gratuitously assume a duty to provide a safe workplace. Bethlehem did not construct, maintain or own the scaffold. It was put up by McGraw and used by both McGraw's and Nuclear's employees. Nuclear's and McGraw's contracts with Bethlehem obligated Nuclear and McGraw to provide their own equipment and materials, and there is no evidence that Bethlehem provided anything with regard to the scaffold. Moreover, there is no evidence of any "assumption of control" by Bethlehem of the scaffold, which might have provided a basis for holding Bethlehem liable for defects in the scaffold. *McClure,* 570 N.E.2d at 1322 ("if a landowner assumes control of a contractor's instrumentality, the potential for liability will attach").

■ Second, Lostumbo has failed to offer evidence showing that Bethlehem breached its duty to keep the premises reasonably safe. There is nothing in the record showing that Bethlehem employees used the scaffold, or had any knowledge of

any dangers involving the scaffold, prior to Lostumbo's accident. Bethlehem employees pointed out where work needed to be done; it is not clear on the present record whether they simply pointed from the floor or got up on the scaffold. Lostumbo was apparently in a better position to discover the alleged defect, the piece of metal protruding from the angle iron, because he used the scaffold. Although he did not fall but jumped from the scaffold, Lostumbo complains about the lack of a rail or rope around the scaffold. He also complains about the lack of an access ladder or stairway. Nuclear's contract, however, clearly obligated Nuclear to provide such equipment as it deemed necessary. Lostumbo used an upside down bucket to ease his access to the scaffold. If he felt a ladder or stairs were needed, he should have sought such equipment from his own employer. From Bethlehem's vantage point, the scaffold was not clearly dangerous. Therefore, Lostumbo has failed to offer evidence from which negligence by Bethlehem could be inferred.

In sum, the court finds that Bethlehem had only a general duty to keep its premises reasonably safe, and that Lostumbo has failed to offer evidence showing that Bethlehem breached that duty. Accordingly, Bethlehem is entitled to summary judgment.

## CONCLUSION

For the reasons stated above, Bethlehem's motion for summary judgment on Lostumbo's amended complaint is granted.

IT IS SO ORDERED.