Pauline ADAMS, Administratrix of the Estate of Timothy Kyle Adams, Deceased, Appellants–Plaintiffs Below,

v.

INLAND STEEL COMPANY, A Corporation, Appellees–Defendants Below.

No. 37A03–9210–CV–330.

Court of Appeals of Indiana, Third District.

March 25, 1993.

Transfer Denied June 4, 1993.

Roger A. Weitgenant, Glenn J. Tabor, Blachly, Tabor, Bozik & Hartman, Valparaiso, for appellants-plaintiffs below.

David Cerven, Burke, Murphy, Costanza & Cuppy, East Chicago, for appellees-defendants below.

STATON, Judge.

Pauline Adams, Administratrix of the Estate of Timothy Adams, appeals a grant of summary judgment in favor of Inland Steel Company in a wrongful death action. She presents two issues for our review:

I. Whether the trial court erroneously granted Inland's motion to strike Adams' summary judgment response and supporting deposition.

II. Whether the existence of a genuine issue of material fact precluded the entry of summary judgment.

We affirm.

During 1977, Inland accepted a bid from contractor Pangere & Logan to install a metal roof at the Inland plant located in northwestern Indiana. On June 1, 1977, Timothy Adams (one of the Pangere & Logan employees involved in the roofing project) fell to his death through an opening in the roof decking.

Pauline Adams filed her initial complaint in the Cook County (Illinois) Circuit Court.[1] The action was subsequently dismissed for *forum non-conveniens* and refiled in the Lake County Superior Court. Following changes of venue from the judge and the forum, a motion to dismiss was denied by Special Judge John Richert of the Jasper Superior Court.

On February 11, 1991, Judge Richert issued an order mandating the completion of discovery by October 17, 1991 and establishing a November 16, 1991 deadline for summary judgment motions. On November 15, 1991, Inland filed a motion to continue the trial date and the deadlines established in the case management schedule. Inland contemporaneously filed its motion for summary judgment. On December 9, 1991, the trial court entered an order providing:

"Comes now the Court, and by the agreement of the parties, continues the trial date set for February 25, 1992, for trial of this matter. Hearing on Defendant's Motion for Summary Judgment is hereby continued for a reasonable period of time in which for Plaintiff to complete its necessary discovery in which to respond to Defendant's Motion for Summary Judgment."

Record, p. 101.

Further continuances were granted by the trial court on February 25, 1992 and March 23, 1992; the summary judgment hearing was rescheduled for June 1, 1992. On May 28, 1992, Adams filed her motion for leave to file a response to Inland's summary judgment motion and motion to publish the deposition of Anthony Maicher. Argument was heard on June 1, 1992. On June 24, 1992, the trial court issued an order striking Adams' response and deposition as untimely and granting summary judgment in favor of Inland.

I.

*Striking of Response and Deposition*

Adams contends that her response and supporting deposition were timely filed

<hr />

1. The initial complaint was filed on July 7, 1978. Inexplicably, the action was pending in the Illinois court almost twelve years before its dismissal on the basis of forum non conveniens on February 14, 1990.

inasmuch as the trial court granted multiple continuances of the summary judgment hearing, without specifying a revised date by which discovery was to be completed or a summary judgment response filed. Inland argues that Adams obtained an extension of the hearing date, but failed to obtain an extension of time in which to file her response.

Ind.Trial Rule 56(C) provides in pertinent part:

"The motion and any supporting affidavits shall be served in accordance with the provisions of Rule 5. An adverse party shall have thirty (30) days after service of the motion to serve a response and any opposing affidavits. The court shall conduct a hearing on the motion which shall be held not less than ten (10) days after the time for filing the response. At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion."

Pursuant to T.R. 56(I), the trial court may extend the time limitation provisions of T.R. 56 "for cause shown." Here, the trial court continued the hearing date for a "reasonable period" in which to conduct discovery. Ultimately, the trial court extended the summary judgment hearing date to June 1, 1992 but did not designate a specific corresponding date for filing a response to the summary judgment motion.

Adams' response was filed four days prior to the June 1 hearing date. The trial court abused its discretion by striking the response and supporting deposition, where no final extension date for filing the response had been established.

## II.

### Issue of Material Fact

Adams next contends that the entry of summary judgment was precluded by the existence of a genuine issue of material fact, i.e., whether Inland assumed responsibility for the safety of its independent contractors.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter* (1992), Ind., 596 N.E.2d 1369, 1371. At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Collins v. Covenant Mut. Ins. Co.* (1992), Ind.App., 604 N.E.2d 1190, 1194.

As a general rule, a property owner is under no duty to provide an independent contractor with a safe place to work. *McClure v. Strother* (1991), Ind. App., 570 N.E.2d 1319, 1321. However, a landowner may become liable to an independent contractor if the landowner gratuitously assumes a duty to provide a safe work place or takes control over an instrumentality used by the contractor. *Id.* at 1321–23. Adams alleges that Inland exerted control over Pangere & Logan's safety practices and gratuitously undertook to provide for the safety of independent contractor Timothy Adams.

In moving for summary judgment, Inland relied upon the affidavits of William Rathjen (the general foreman of Pangere & Logan at the time of the accident) and Nicholas Pangere (the former president of Pangere & Logan). Rathjen and Pangere averred that: Inland did not control the

means or methods of Pangere & Logan's work; Inland did not direct safety measures for Pangere employees; all tools for the roofing project were supplied by Pangere & Logan; and Pangere & Logan was responsible for safety measures on the job site. Record, pp. 92–97.

Adams' summary judgment response designated portions of the Maicher deposition as indicative of an issue of material fact. The trial court accepted the Maicher deposition for filing but sustained Inland's motion to strike the deposition and thus did not consider it when granting summary judgment. This court has obtained the Maicher deposition by the issuance of a writ of certiorari.

We are satisfied that the sole materials designated by Adams—portions of the Maicher deposition—disclose no issue of material fact. Maicher, a retired Inland engineer and building inspector, testified that Inland required contractor compliance with certain safety rules enacted for the protection of Inland employees (e.g., contractors working overhead were prohibited from "throwing down" materials onto Inland's work area). Supp.Record, pp. 14–16. These rules were embodied in a job safety orientation form. Maicher also testified that Inland enforced no rules designed to ensure the safety of independent contractors (e.g., Inland did not intervene if a contractor engaged in a violation of OSHA rules). Supp.Record, pp. 37, 46. Moreover, Inland exerted no control over the means by which Pangere & Logan was to accomplish the roofing task. Supp.Record, p. 39. Pangere & Logan supplied all equipment used in performing the roofing job; Timothy Adams was walking backward and pulling a cord attached to Pangere's equipment when he fell.

■■■ A landowner who does not control the "manner or means" by which a contractor performs does not reserve the control of job site safety so as to render the landowner liable for a contractor's injuries merely because the owner contractually requires compliance with safety rules. *Perry v. NIPSCO* (1982), Ind.App., 433 N.E.2d 44, 48, *reh. denied, trans. denied.* However,

a landowner may by its conduct assume responsibility for job site safety (e.g., by conducting safety meetings with employees of contractors and employing safety men with "jurisdiction" of the site). *Id.* at 49. Here, the undisputed facts do not disclose Inland's assumption of a gratuitous duty of care. Accordingly, Inland was entitled to judgment as a matter of law.

Affirmed.

GARRARD and BARTEAU, JJ., concur.