Michael **SALIMA** and Annette Salima, Plaintiffs

v.

**SCHERWOOD SOUTH, INC.,** an Indiana Corporation; **Scherwood Golf Concessions, Inc.,** an Indiana Corporation; and **Northern Indiana Public Service Company,** an Indiana Corporation, Defendants.

**Civ. No. H 92–59.**

United States District Court, N.D. Indiana, Hammond Division.

Feb. 1, 1994.

Affirmed 38 F.3d 929.

Saul I. Ruman, Hammond, IN and Michael Lauzon, and Eugene Pavalon, Chicago, IL, for plaintiffs.

Lester Murphy, Palm Harbor, FL, for defendants.

## ORDER

RODOVICH, United States Magistrate Judge.

This matter is before the court on the Motions for Summary Judgment filed by the defendants, Scherwood South, Inc. and Scherwood Golf Concessions, Inc., on December 28, 1993. For the reasons set forth below, the motions are **GRANTED.**

### Factual Background

On July 10, 1991, the plaintiff, Michael Salima, was hired to determine the cause of a lighting problem in the Scherwood Country Club parking lot. After inspecting a transformer on an electrical pole from the ground, Salima decided to conduct a closer inspection by climbing a ladder which he had leaned against the pole. As Salima climbed the ladder, he came in contact with electrical wires and was thrown to the ground. Salima has filed this lawsuit to recover for the personal injuries which he received during this incident.

Although Scherwood South and Scherwood Golf are separate corporations, they are owned by the same individuals and have common officers. It is undisputed that the electrical pole in question was owned by Scherwood South and located in a parking lot maintained by Scherwood South. Based upon the common ownership and the joint activities conducted at the Scherwood Country Club, Salima alleges that the two corporations are jointly liable for his injuries.

Although the motion filed by Scherwood Golf is based in part upon the fact that it did

not own either the parking lot or the electrical pole, both defendants also contend that Salima was an independent contractor and that they are not responsible for his injuries.

### Discussion

■ Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Trautvetter v. Quick,* 916 F.2d 1140, 1147 (7th Cir.1990); *McGraw–Edison v. Walt Disney Products,* 787 F.2d 1163, 1167 (7th Cir.1986); *Ross v. Franzen,* 777 F.2d 1216, 1220 (7th Cir.1985); and *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Dahnke v. Teamsters Local 695,* 906 F.2d 1192, 1195 (7th Cir.1990); and *Munson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985). A fact is material if it is outcome determinative under applicable law. *Doe v. Small,* 934 F.2d 743, 752 (7th Cir.1991); *Whetstine v. The Gates Rubber Company,* 895 F.2d 388, 392 (7th Cir.1990); and *Big O Tire Dealers, Inc.,* 741 F.2d at 163. Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Powers v. Dole,* 782 F.2d 689, 694 (7th Cir. 1986); *Munson,* 754 F.2d at 690; and *Burns v. Rockford Life Insurance Company,* 740 F.2d 542, 546 (7th Cir.1984). Finally, summary judgment generally is not an appropriate means of resolving questions of motive and intent. *United Association of Black Landscapers v. City of Milwaukee,* 916 F.2d 1261, 1268 (7th Cir.1990); *Bartman v. Allis–Chalmers Corporation,* 799 F.2d 311, 312 (7th Cir.1986); and *Munson,* 754 F.2d at 690.

■ In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986).

*See also Celotex Corporation v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986); *County of Vernon v. United States,* 933 F.2d 532, 534 (7th Cir. 1991); *Visser v. Packer Engineering Associates, Inc.,* 924 F.2d 655, 660 (7th Cir.1991); and *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990).

■ The defendants contend that Salima was an independent contractor under Indiana law. In *Adams v. Inland Steel Company,* 611 N.E.2d 141 (Ind.App.1993), the Court of Appeals discussed the duty which a landowner owed to an independent contractor:

As a general rule, a property owner is under no duty to provide an independent contractor with a safe place to work. However, a landowner may become liable to an independent contractor if the landowner gratuitously assumes a duty to provide a safe work place or takes control over an instrumentality used by the contractor. (citations omitted)

611 N.E.2d at 143.

*See also McClure v. Strother,* 570 N.E.2d 1319, 1321 (Ind.App.1991); *Bafia v. Northern Indiana Public Service Company,* 993 F.2d 1306, 1309 (7th Cir.1993) (under Indiana law, a "landowner is liable to an independent contractor ... if it fails to warn of hidden dangers on the premises that it knew of or ought to have known of and that the contractor did not know of"); and *Bateman v. Central*

**1128**

*Foundry Division, General Motors Corporation,* 992 F.2d 722, 724 (7th Cir.1993).

The deposition of Salima conclusively establishes that he was an independent contractor when he was injured. Marvin Hanson was a professional golfer who managed Scherwood Golf. Marvin also was president of Scherwood South. Marvin's brother, Ronald Hanson, lived on the property and was the head groundskeeper. Salima was a friend of the Hanson brothers and was employed full time as a construction foreman by Midwest Piping. On a number of occasions, Salima had done repair work at the country club at the request of the Hansons.

Prior to July 10, 1991, a timer which controlled the lights in the parking lot was malfunctioning. Salima was asked to determine the cause of the problem. When Salima arrived at Scherwood, he parked his truck behind Ron's house. Salima had been working on the problem for approximately ten minutes when Ron returned home. Ron joined Salima as he was looking up at a transformer approximately 20 feet off the ground. Salima noticed a "gaggle of wires" below the transformer and decided to climb a ladder to conduct a closer inspection:

Q. And when you looked up at the wires, did you say anything to Ron?

A. Yes.

Q. What was it you said?

A. Something doesn't look kosher.

(Salima Deposition, p. 172)

\* \* \* \* \* \*

Q. And then it was at that stage the determination was made to get the ladder 'cause you wanted to check out the wiring above you, right?

A. Yes.

Q. And then as I understand it, he [Ron] went to get the ladder for you?

A. Yes.

Q. And he helped you put it up on the pole, right?

A. Yes.

Q. How long did all that take?

A. Oh, several minutes.

Q. And then did you immediately climb up the ladder or did anything else occur first?

A. No, I climbed up the ladder.

(Salima Deposition, pp. 93–94)

\* \* \* \* \* \*

Q. Other than letting them know that you were there to do the work and where you were going to be doing the work, did they supervise how you were going to do the work?

A. No.

Q. Did they supervise when you were going to do the work?

A. No.

Q. So, when, where and how you were going to do that would be something that was left to your descretion, [sic] is that fair?

A. Yes.

(Salima Deposition, p. 27)

\* \* \* \* \* \*

Q. Would it be fair to say you didn't know what you were?

A. Okay, I was an independent contractor.

(Salima Deposition, p. 31)

\* \* \* \* \* \*

Q. Do you blame Ron Hanson, I'm asking about him personally, for anything that he did that day?

A. Oh, no.

(Salima Deposition, pp. 96–97)

\* \* \* \* \* \*

Q. Is there anything that you believe or you are of the opinion that Marv Hanson did that was wrong?

A. No.

(Salima Deposition, p. 97)

■ By his own admission, Salima was hired as an independent contractor to fix the lighting problem in the parking lot. He started to perform his task even before Ron came home. Salima noticed "a gaggle of wires" while he was standing on the ground and decided to climb a ladder to inspect the transformer more closely. Other than assisting Salima in carrying a ladder to the electri-

cal pole, Ron did not participate in the repair project or give any instructions to Salima. As an electrician, Salima was in a better position to appreciate the danger of "a gaggle of wires" than either of the Hanson brothers. Salima was injured performing a task which he was hired to do, and that is the risk which an independent contractor assumes when he enters the property.

As previously stated, Salima has contended that both defendants were jointly liable for his injuries. Since Scherwood South owned the parking lot and the electrical pole, Scherwood Golf relied upon the ownership issue as an additional basis for avoiding liability. Since it has been determined that Salima was an independent contractor and that the landowner was not responsible for his injuries, it is not necessary to discuss the relationship between the two corporations.

---

For the foregoing reasons, the Motions for Summary Judgment filed by the defendants, Scherwood South, Inc. and Scherwood Golf Concessions, Inc., on December 28, 1993, are **GRANTED.**