**BETHLEHEM STEEL CORPORATION,**
Appellant–Defendant,

v.

**Ronald LOHMAN and Kathleen Lohman,**
Appellees–Plaintiffs,

and

**North Central Crane and Excavator Sales Corporation, the Manitowoc Company, Inc., Harcros Chemicals, Inc. and Sargent Electric Company, Appellees–Defendants.**

No. 45A03–9403–CV–116.

Court of Appeals of Indiana.

Feb. 7, 1995.

Publication ordered Feb. 8, 1996.

John F. Schmoll, Robert D. Brown, Spangler, Jennings & Dougherty, P.C., Merrillville, for Appellant.

Bruce P. Clark, Karen Tallian, Bruce P. Clark & Associates, Munster, Barry D. Rooth, Theodoros, Theodoros & Rooth, P.C., Merrillville, for Appellee.

## OPINION

GARRARD, Judge.

Bethlehem Steel Corporation (Bethlehem) appeals the denial of its summary judgment motion, 646 N.E.2d 1020, in this action brought by Ronald Lohman (Lohman) and Kathleen Lohman for injuries Lohman sustained while engaged in maintenance work on a crane located on Bethlehem's property. We reverse.

### FACTS

In June of 1991, Lohman was an employee of Hunter Corporation (Hunter). Pursuant to a contract with Bethlehem, Hunter was required to "furnish all necessary supervision, labor, material, equipment and insurance to provide and operate 150 Ton Crawler Cranes" and was also obligated to "furnish all necessary supervision, labor, material, insurance and equipment to perform general maintenance type work" on these cranes. (R. 20–21). North Central Crane owned the crane at issue, crane no. 17.

On June 13, 1991, Lohman was engaged in maintenance work on crane no. 17, applying a cleaning solvent to the engine of the crane with a sprayer wand. During the cleaning process the wand brushed against an air release or control valve, generating sparks which started a fire. Lohman received burns to his lower extremities as a result of the fire.

On October 13, 1992, the Lohmans filed a complaint against numerous parties, including a count against Bethlehem, which alleged that Bethlehem breached its duty to keep its premises reasonably safe. The Lohmans' complaint also contained a products liability claim against The Manitowoc Company, Inc. (Manitowoc), the manufacturer of the crane involved in the incident. On September 9, 1993, Bethlehem filed a motion for summary

judgment, contending that it did not owe Lohman a duty with respect to the crane and, if a duty did exist, there was no evidence that it had breached this duty. The Lohmans did not oppose Bethlehem's motion, but Manitowoc filed an opposing brief. The trial court heard argument and determined that issues of fact existed precluding summary judgment.

## ISSUES AND DISCUSSION

Bethlehem raises three issues for our review, of which we address the following two: [1]

I. Whether Bethlehem owed any duty to Ronald Lohman with respect to crane no. 17.

II. Whether Bethlehem breached any alleged duty with respect to crane no. 17.

## ISSUE I

Manitowoc argues that there exists disputed issues of fact regarding whether Bethlehem exerted control over crane no. 17 which preclude the entry of summary judgment. We disagree and reverse the trial court.

■ Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). Once the moving party has met its burden of proving that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law, the opponent must respond by setting forth specific facts showing a genuine issue for trial, and may not simply rest on the allegations contained in the pleadings. *Adams v. Inland Steel Co.* (1993), Ind.App., 611 N.E.2d 141, 143, *trans. denied.* At the time of the filing of the motion or response, a party shall designate to the court all parts of the evidentiary materials upon which it relies for purposes of the motion. T.R. 56(C); *Daugherty v. Fuller Engineering Service Corp.* (1993), Ind.App., 615 N.E.2d 476, 479. In our review we apply the same standard as the trial court and

consider the facts in the light most favorable to the nonmoving party. *Id.; Valley Federal Sav. Bank v. Anderson* (1993), Ind.App., 612 N.E.2d 1099, 1101.

■ Generally, the owner of property is under no duty to provide an independent contractor with a safe place to work, although there is a duty, which extends to employees of independent contractors, to keep the premises in a reasonably safe condition. *McClure v. Strother* (1991), Ind.App., 570 N.E.2d 1319, 1322 (citations omitted); *Orville Milk Co. v. Beller* (1985), Ind.App., 486 N.E.2d 555, 559. However, where the instrumentality causing the injury is in the control of the independent contractor, the complainant must show either that the landowner assumed control of the instrumentality or had superior knowledge of the potential dangers involved in its operation; otherwise, the landowner owes no duty to the contractor's employee. *Barber v. Cox Communication, Inc.* (1994), Ind.App., 629 N.E.2d 1253, 1259, *trans. denied; Orville,* 486 N.E.2d at 559.

■ Manitowoc contends that there is evidence showing that Bethlehem exercised control over the crane. The designated evidence indicates that Hunter could not move the cranes without prior written approval from Bethlehem, and Bethlehem instructed Hunter where the cranes were to be used in their operations. Also, Bethlehem had to approve major expenditures regarding repair work,[2] and Hunter employees had to abide by Bethlehem's safety rules. Manitowoc also points to evidence that Bethlehem controlled the scheduling of repairs so that it did not interfere with operation of the mill. Finally, Manitowoc contends that the fact Bethlehem's fire trucks were at the scene of the accident, and that Bethlehem conducted a post-fire investigation, demonstrates that Bethlehem exercised control over the crane.[3]

---

1. Bethlehem also argues that Manitowoc did not have standing to oppose its motion for summary judgment. As in *Rauck v. Hawn* (1990), Ind. App., 564 N.E.2d 334, 338 n. 1, we have decided to rule upon the merits of Bethlehem's motion.

2. The only instance of repair work which was formally submitted for Bethlehem's approval was

a job costing approximately $70,000.00. There was no evidence that Bethlehem had ever rejected a proposal.

3. Manitowoc also offers the general testimony of the craft foreman for Hunter that he discussed expenditures on repairs with an employee of Bethlehem. There is no evidence, however, that

Indiana cases have uniformly held that, where an instrumentality causing injury was in the control of an independent contractor, a duty will not be found where there is no evidence that the landowner maintained any control over the "manner or means" by which the contractor engaged in its work. *Adams,* 611 N.E.2d 141; *Phillips v. United Engineers* (1986), Ind.App., 500 N.E.2d 1265; *Perry v. Northern Indiana Public Service Co.* (1982), Ind.App., 433 N.E.2d 44, 48 (no provision of the contract gave NIPSCO the right to control the "manner or means" by which the contractor completed its obligations, "the essential requirement for destruction of the contractor-independent contractor relationship").

In *Phillips,* the employee of an independent contractor was installing sheet metal siding when he fell from an unfinished catwalk to his death. The contract with the landowner permitted the owner to require that the materials furnished and work performed met certain specifications and complied with all safety rules and regulations. The court stated that "[i]f control is said to be operative when the right of some supervision is retained, it must be more than a general right which is usually reserved for those who hire persons to perform work." *Phillips,* 500 N.E.2d at 1267. Thus, as there was no evidence that the landowner controlled the manner or means by which the independent contractor performed its duties, there could be no duty predicated upon a right to control. *Id.* at 1268.

■ Further, a landowner who does not control the manner or means by which a contractor performs does not reserve the control of job site safety so as to render the landowner liable for a contractor's injuries merely because the owner contractually requires compliance with safety rules. *Adams,* 611 N.E.2d at 144. While evidence of a landowner conducting safety meetings and employing safety men with "jurisdiction" of the site may establish such liability, there is no evidence of any such activities on the part of Bethlehem in this case. *See id.*

they discussed the manner and means of per-

Here, the contract between Hunter and Bethlehem clearly established that Hunter had the right and responsibility for operating, maintaining and repairing the cranes. Hunter was further obligated to procure insurance in connection with these duties. Hunter was responsible for obtaining all labor and materials necessary to perform these duties. Manitowoc has not designated any evidence showing that Bethlehem ever operated, performed maintenance or repair work, or inspected crane no. 17. The fact that Bethlehem reserved the right to approve major repair expenditures constitutes a general right of supervision rather than control over the particular means and methods of operating, repairing and maintaining the crane. While Bethlehem maintained some control as to the timing of repair work and the physical location of the cranes, Bethlehem did not exercise any control over the actual manner or means by which Hunter operated, repaired and maintained the cranes. The absence of any evidence on this issue mandates the entry of summary judgment.

In addition, we note the similarities between this case and *Lostumbo v. Bethlehem Steel, Inc.* (1992), N.D.Ill., 797 F.Supp. 652, *aff'd* (1993), 8 F.3d 569. Applying Indiana substantive law, the district court addressed the situation where the employee of an independent contractor, hired by Bethlehem to do some welding and to inspect some other work, brought suit against Bethlehem for failing to maintain safe scaffolding. In this case, Bethlehem's manager had the right to direct the work of the independent contractor to the extent that he told the contractor which work needed to be done and monitored the work to ensure that it met Bethlehem's specifications and timetable. *Lostumbo,* 797 F.Supp. at 654. The manager also had the right to stop the work and order correction of unsafe conditions, and the manager met once a week with the independent contractor's manager regarding the work to be done and the applicable specifications. However, no Bethlehem employees directed the actual performance of the work. *Id.* The court found that, as Bethlehem did not construct, maintain or own the scaffold, and the con-

forming any maintenance or repair work.

tract obligated the contractor to provide its own equipment, and there was no evidence of an assumption of control, the only duty was to keep the premises in a reasonably safe condition. *Id.*

As there are no facts in the designated evidentiary materials supporting a reasonable inference that Bethlehem assumed control over the means and manner of operating the crane or providing maintenance and repair work, summary judgment should have been granted.

**ISSUE II**

Even if we were to conclude that a duty did exist, Bethlehem has established that there is no evidence of a breach of that duty.[4]

In determining whether a landowner has breached its duty to an invitee, it is appropriate to consider the comparative knowledge of the landowner and invitee. *Douglass v. Irvin* (1990), Ind., 549 N.E.2d 368, 370. Here, there is no evidence that any Bethlehem employees had ever operated or performed any maintenance or repair work on the crane. Hunter was contractually bound to perform that task. As an employee of Hunter performing maintenance work, Lohman was clearly in a better position to discover any defects in the crane or the method of cleaning the engine. There are no facts that would have put Bethlehem on notice of any dangerous condition involving the crane. Therefore, summary judgment could be affirmed on failure to prove a breach of duty as well. *See Lostumbo,* 797 F.Supp. at 655–56.

Finally, we address whether Manitowoc may name Bethlehem as a nonparty upon remand. We conclude that it may not.

Dispositive of this issue is *Rauck v. Hawn* (1990), Ind.App., 564 N.E.2d 334. In this case, a passenger injured in a single vehicle accident sued the minor driver and several other co-defendants, alleging that they had furnished alcohol to the driver. Two of the co-defendants, Rauck and Schafer, moved for summary judgment. The trial court granted Schafer's motion but denied

Rauck's motion. This decision was affirmed on appeal, and the plaintiff argued on appeal that, if Schafer's motion was affirmed, Rauck should not be allowed to name Schafer as a nonparty. The court agreed:

> [W]e agree with the trial court that Schafer cannot be held liable for negligence in the provision of alcoholic beverages to [the driver]. This determination means that the trier of fact cannot now assign fault to Schafer as a nonparty, for a culpable nonparty must be capable of being subjected to civil liability. Final percentages of fault may be allocated only to a plaintiff, a defendant, and any person who is a nonparty. "Nonparty" means a person who is, or may be, liable to the claimant in whole or in part. I.C. 34–4–33–2.

*Id.* at 338 (citations omitted).

Similarly, here Bethlehem is no longer an entity who may be liable to Lohman. Consequently, Manitowoc may not name it as a nonparty.

For the foregoing reasons the trial court is reversed and instructed to enter summary judgment in favor of Bethlehem.

HOFFMAN and BAKER, JJ., concur.

---

4. Manitowoc failed to present any argument in opposition to Bethlehem at the trial court on this issue.