## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 28 2017, 8:09 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

John P. Daly, Jr.
Golitko & Daly, PC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Thomas M. Kimbrough
William A. Ramsey
Barrett McNagny LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ricky L. Baker and Victoria Baker,

*Appellants-Plaintiffs*,

v.

Fall Creek Housing Partners, LLC,

*Appellee-Defendant*.

April 28, 2017

Court of Appeals Case No. 49A02-1605-CT-1060

Appeal from the Marion Superior Court

The Honorable John F. Hanley, Judge

Trial Court Cause No. 49D11-1407-CT-24953

**Brown, Judge.**

[1] On May 10, 2016, Ricky L. Baker and Victoria Baker (together, the "Bakers") appealed the trial court's entry of summary judgment in favor of Fall Creek Housing Partners ("Fall Creek") and the denial of their motion to correct error. We reviewed the record before us, found the Bakers did not point to an order of the trial court which constituted a final judgment under Ind. Appellate Rule 2(H)[1] or an appealable interlocutory order, and dismissed the Bakers' appeal. *See Baker v. Fall Creek Hous. Partners, LLC*, No. 49A02-1605-CT-1060 (Ind. Ct. App. Nov. 20, 2016).

[2] The Bakers filed a petition for rehearing arguing they inadvertently failed to include a copy of the trial court's March 7, 2016 order entering final judgment in favor of Fall Creek in their appendix, and they filed a motion for leave to supplement the appendix to include the court's March 7, 2016 order. The March 7, 2016 order in the Bakers' supplemental appendix is titled Entry of Judgment, grants Fall Creek's request for summary judgment on the Bakers' claims, and "determines that no just reason for delay exists and directs the entry of final judgment in favor of Fall Creek and against [the Bakers]." Appellants' Supplemental Appendix, Volume 2, at 3. Based on the additional information provided in the Bakers' supplemental appendix, we grant the Bakers' petition for rehearing and motion to supplement the appendix and vacate our original opinion. *See Meredith v. Meredith*, 854 N.E.2d 942, 944-945 (Ind. Ct. App. 2006)

---

[1] We noted there was an entry in the chronological case summary ("CCS") dated March 8, 2016, which indicated an order was signed March 7, 2016, but that the record did not include a copy of the order.

(granting the appellant's petition for rehearing and motion to file supplemental appendix following a dismissal of an appeal as untimely, finding that the additional information provided in the supplemental appendix showed the appeal was timely, and vacating the original opinion and addressing the merits of the appellant's arguments).

### *Issue*

The issue is whether the trial court erred in entering summary judgment in favor of Fall Creek or abused its discretion in denying the Bakers' motion to correct error. We affirm.

### *Facts and Procedural History*

Ricky Baker, who was an employee of Waste Management, Inc. ("Waste Management"), visited an apartment rental property in Indianapolis owned by Fall Creek to unload trash compactor containers on September 24, 2012, and was injured when his hand was smashed against a container.

The Bakers filed a complaint for damages in July 2014 and, with the court's approval, an amended complaint for damages in September 2014 against Buckingham Urban Properties, LLC ("Buckingham"), JV Manufacturing Inc. d/b/a Cram-A-Lot ("JV"), and Cram-A-Lot Logistics, LLC ("Cram-A-Lot").[2]

---

[2] In their motion to amend the complaint, the Bakers stated they filed the original complaint against Buckingham and Cram-A-Lot, and that "Cram-A-Lot Logistics, LLC has properly identified themselves . . . as JV Manufacturing, Inc. d/b/a Cram-A-Lot," and they sought leave to amend their complaint to add JV as a party to the action. Appellant's Appendix, Volume 2, at 33.

The amended complaint alleged that Ricky was employed by Waste Management; that Buckingham purchased or leased from Cram-A-Lot and/or JV a trash compactor for use at a property in Indianapolis; that Buckingham contracted with Waste Management for trash removal at the property including emptying the Cram-A-Lot and/or JV trash compactor; and that Ricky was a business invitee on the property working within the course and scope of his employment with Waste Management when he was injured. It further alleged that on or about September 24, 2012, Ricky was on the property to empty a trash compactor when the compactor moved, crushing his hand; that the compactor had been placed on a slope by employees and/or agents of Buckingham and/or Cram-A-Lot and/or JV; and that Ricky was seriously injured.

[6] On October 9, 2014, Buckingham filed an Answer to Amended Complaint, Affirmative Defenses, Third Party Complaint, and Jury Demand. In its third party complaint, it alleged in part that Buckingham Management, LLC ("Buckingham Management") is responsible for managing real estate including that occupied by Buckingham; that it entered into a Periodic Services Agreement with Waste Management for the collection and disposal of waste; and that Waste Management is required to defend and indemnify Buckingham from the claims of the Bakers. Waste Management filed a motion for leave to file a counterclaim against Buckingham to recover its attorney fees, costs, and expenses incurred in its defense to the third party complaint, and the court granted the motion and ordered that Waste Management's counterclaim was

deemed filed as of the date of the order. On March 27, 2015, Buckingham filed a motion for judgment on the pleadings as to Waste Management's counterclaim.

[7] On November 23, 2015, the parties filed a Joint Stipulation to Amend Caption and Substitute Parties, stating that at the time the action was initially filed confusion existed as to the location of the accident that is the subject of the Bakers' complaint and Buckingham's third party complaint, and that discovery has revealed the location of the incident. The Stipulation stated that the owner of the premises on which the incident occurred was Fall Creek and not Buckingham, and that Buckingham should be dismissed and Fall Creek substituted as a defendant on the Bakers' claim, as the third party plaintiff on the third party complaint against Waste Management, and as the defendant on Waste Management's counterclaim to the third party complaint.

[8] On November 25, 2015, Fall Creek filed a motion for summary judgment, a memorandum in support of the motion, and a designation of evidence which included the deposition of Ricky and the Periodic Services Agreement between Waste Management and Buckingham Management as agent for property owners including Fall Creek. The Bakers filed their opposition and designated evidence. Fall Creek filed a motion to strike and reply in support of its summary judgment motion which stated in part that the Bakers cited to an owners' manual that was not designated.

[9] On February 1, 2016, the court held a hearing on Fall Creek's summary judgment motion.[3] On February 25, 2016, it entered an order of dismissal which stated that a joint stipulation of partial dismissal as to JV and Cram-A-Lot was before the court and ordered that JV and Cram-A-Lot be dismissed from the action.

[10] On February 26, 2016, the court entered an order which: denied Fall Creek's March 27, 2015 motion for judgment on the pleadings as to Waste Management's counterclaim; granted Fall Creek's motion to strike as to references made by the Bakers to an owners' manual and denied it in all other respects; granted Fall Creek's November 25, 2015 motion for summary judgment; and ordered that Fall Creek submit a proposed judgment entry to the court within ten days. On March 7, 2016, the court issued an Entry of Judgment granting Fall Creek's request for summary judgment on the Bakers' claims, stating there was no just reason for delay and directing the entry of final judgment in favor of Fall Creek and against the Bakers. The Bakers filed a motion to correct error, and after a hearing[4] the court denied the motion.

### Discussion

[11] The issue is whether the trial court erred in entering summary judgment in favor of Fall Creek or abused its discretion in denying the Bakers' motion to

---

[3] The record does not contain a transcript of the hearing.

[4] The record does not contain a transcript of the hearing.

correct error. We generally review rulings on motions to correct error for an abuse of discretion. *Speedway SuperAmerica, LLC v. Holmes*, 885 N.E.2d 1265, 1270 (Ind. 2008), *reh'g denied*; *Ind. Bureau of Motor Vehicles v. Charles*, 919 N.E.2d 114, 116 (Ind. Ct. App. 2009).

[12] When reviewing a grant or denial of a motion for summary judgment our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id*. Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id*. Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party. *Id*. Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows there is no genuine issue of material fact and that the moving party deserves judgment as a matter of law. *Id*.

[13] The Bakers argue that Fall Creek controlled the instrumentality of harm by moving a trash compactor on wheels from a level concrete pad onto a sloped drive where it rolled and injured Ricky and that summary judgment is not appropriate where the premises owner retains and exercises control over the

instrumentality of harm. They argue that Ricky never touched the compactor until it rolled down the slope.

[14] Fall Creek contends that a landowner is generally not liable for injuries suffered by an employee of an independent contractor while the employee is doing work the independent contractor was hired to do, that Ricky knew the compactor was on wheels and sitting on an incline, and that, assuming the compactor and sloped arc of the land were dangerous, the conditions were obvious and undisputedly known to Baker.

[15] To prevail on a claim of negligence the plaintiff must show: (1) a duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty. *Goodwin*, 62 N.E.3d at 386. Absent a duty there can be no negligence or liability based upon the breach. *Id*. Whether a duty exists is a question of law for the court to decide. *Id*. at 386-387. A defendant may obtain summary judgment in a negligence action when the undisputed facts negate at least one element of the plaintiff's claim. *Pelak v. Ind. Indus. Servs., Inc.*, 831 N.E.2d 765, 769 (Ind. Ct. App. 2005), *reh'g denied, trans. denied*. Where the facts are undisputed and lead to but a single inference or conclusion, the court as a matter of law may determine whether a breach of duty has occurred. *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003).

[16] Generally, an owner of property is under no duty to provide an independent contractor with a safe place to work. *Id*. (citing *Zawacki v. U.S.X.*, 750 N.E.2d

410, 414 (Ind. Ct. App. 2001), *trans. denied*).  However, the owner has a duty to maintain the property in a reasonably safe condition for business invitees, including employees of independent contractors.  *Id.* (citing *Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1264-1265 (Ind. Ct. App. 2002), *trans. denied*; *Zawacki*, 750 N.E.2d at 414).  The Restatement (Second) of Torts § 343 (1965) provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> > (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> >
> > (b) *should expect that they will not discover or realize the danger, or will fail to protect themselves against it*, and
> >
> > (c) fails to exercise reasonable care to protect them against the danger.

(Emphasis added).  *See Pelak*, 831 N.E.2d at 769; *Merrill*, 771 N.E.2d at 1265.

[17]   Section 343A of the Restatement, which is read in conjunction with Section 343, provides: "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land *whose danger is known or obvious to them*, unless the possessor should anticipate the harm despite such knowledge or obviousness."  RESTATEMENT (SECOND) OF TORTS § 343A (emphasis added); *Merrill*, 771 N.E.2d at 1265 (citing *Ozinga Transp. Sys., Inc. v. Mich. Ash Sales, Inc.*, 676 N.E.2d 379, 385 (Ind. Ct. App. 1997), *reh'g denied, trans. denied*).  "The word 'known' denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it

involves." RESTATEMENT (SECOND) OF TORTS § 343A, cmt. b. "'Obvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Id*. The comparative knowledge of a possessor of land and an invitee regarding known or obvious dangers may properly be taken into consideration in determining whether the possessor breached the duty of reasonable care under Sections 343 and 343A. *Smith v. Baxter*, 796 N.E.2d 242, 245 (Ind. 2003).

[18] Similarly, control over a premises is used to determine who is liable for injuries on the premises. *Pelak*, 831 N.E.2d at 769. The thread through the law imposing liability based on occupancy of a premises is control. *Id*. The rationale is to subject to liability the person who could have known of any dangers on the land and therefore could have acted to prevent any foreseeable harm. *Id*. at 769-770. The theory that a duty arises based on the control retained by the premises owner is consistent with the Restatement (Second) of Torts § 414, which provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*See Pelak*, 831 N.E.2d at 770. Section 414 applies "where there is retention of control over the operative detail of the work." *Id*. (citation omitted). Comment c to Section 414 discusses the limits of the rule:

In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

RESTATEMENT (SECOND) OF TORTS § 414, cmt. c.

[19] The designated evidence reveals that Waste Management entered into a Periodic Services Agreement Between Owner and Service Provider in 2011 pursuant to which it agreed to perform certain waste collection and disposal work. Waste Management agreed to provide at its sole expense all labor, materials, services, equipment, tools, scaffolds, and hoists required to fulfill its obligations and to complete the work; to at all times be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the work; and, to the extent doing so was within its control and authority, to provide all reasonable protection to prevent damage, injury, or loss to all employees of Waste Management performing services on the property.

[20] In his deposition, Ricky testified that he began his employment with Waste Management in 1989, at some point he became a supervisor, he went back to driving a truck in 2003, and that, from 2003 until the date of the accident, he

was driving commercial front-load trucks. He testified that, as of the date of the accident, he had worked an established route for at least two years, he had the same route each Monday, and that the accident occurred on a Monday morning. Ricky indicated that he always drove the same truck and had been driving it for about three years. When asked if he had "been delivering to that specific location then for at least two years," Ricky testified "[n]ot that specific location because it was a newer customer," and when asked "I thought you said you did an established route for two years" and "was this something that was added to the route during that two years," he replied "Yes. If we have a new customer, they just add it to the list. If we lose a customer, then they'll just take it out of the list." Appellant's Appendix, Volume 3, at 40. When asked how long he had been picking up from the location where the accident occurred, Ricky answered "[p]robably three months." *Id*.

[21] When asked to describe what happened the day of the accident, Ricky testified that he arrived at the location, that "[t]hey were compactors, so they already had them separated and pulled out on like a little driveway area," and that "the truck wouldn't fit up there, so [he] actually had to park in the street and go get the containers and pull them down." *Id*. at 39. He testified "I went up and got the first one" and "was pushing it down to the truck" and, "[w]hile I was still holding onto it, for some reason another one – and I didn't see what happened behind me – just came rolling on its own and smashed my hand between the two, the one that I was holding and that one. It came from behind." *Id*.

[22] Ricky indicated that there were four wheels on the compactor containers that smashed his hand, one on each corner, and that the containers were designed to roll. When asked why the containers had wheels on them at that location, Ricky answered "[b]ecause they were in, like, a little garage area. So they had wheels so they could bring them out to the truck." *Id*. at 42. Ricky indicated that he moved the containers on wheels into position so they could be hydraulically lifted to dump into the truck and that was something he did every time he went to this apartment complex. He testified that, when he went to the complex, the containers were "[u]p by the garage," they were outside, he would have to move the containers "maybe 25 feet" to his truck, and that after he unloaded them he would roll them back up into that position. *Id*. at 46. When asked if, on the day of the accident, "the containers were in the same location where they would normally be any other time [he was] on a route," Ricky responded affirmatively, and when asked "[s]o for the three months previous to that time, each time you got there the containers would be in the same location," he answered "[y]es, pretty much." *Id*.

[23] When asked to describe the slope, Ricky stated "[i]t's like a little drive that goes up to where the containers are inside the garage" and "[i]t's just a slight grade." *Id*. at 48. When asked "[s]o when you get there that day, are they on [a] flat surface or on the slope," Ricky answered "[t]hey're on the slope," and when asked "[a]nd you knew that from all your times that you've been there before," he answered "Yes." *Id*. When asked "[a]nd when you got done unloading them all the times you'd been there before, you put them back on that slight

slope," Ricky replied "Yes. I'd push them all the way into the garage for the customer." *Id*. When asked "I'm confused. When you got there, were they in the garage," he responded "No, they would be out. They had a guy who would unhook them and roll them out." *Id*. When asked if he placed the containers back where he found them or back in the garage, Ricky testified "[s]ometimes I would put them back where I found them. Sometimes I would push them all the way in for the guy, for the customer." *Id*. When asked "[s]o you clearly knew that slope was there," Ricky replied "[y]es," and when asked "[a]nd you clearly knew that the containers and compactors were on wheels," he again replied "[y]es." *Id*.

[24] Fall Creek is not liable to its invitees for harm caused by any activity or condition "whose danger is known or obvious to them," RESTATEMENT (SECOND) OF TORTS § 343A, cmt. b, and the designated evidence establishes that the danger presented by the containers, including the fact they were on wheels and were placed on a drive which had a slight grade, was known and obvious to Ricky. Ricky indicated that he knew the slope existed and the containers were on wheels, at the time of the accident he had been picking up from the location for approximately three months, he had the same route each week, the containers were "pretty much" in the same location each time, and that when he arrived that day the containers were on the slope. Appellant's Appendix, Volume 3, at 46.

[25] In addition, Fall Creek did not have knowledge of any danger that Ricky did not possess and could not have informed him of any facts of which he was not

already aware. The placement of the wheeled containers did not constitute a condition that Fall Creek should have expected that Ricky would not discover or fail to protect himself against. *See* RESTATEMENT (SECOND) OF TORTS, § 343 (a possessor of land is subject to liability only if it "should expect that [invitees] will not discover or realize the danger, or will fail to protect themselves against it"); *Merrill*, 771 N.E.2d at 1265-1267 (observing that Knauf hired a professional roofing contractor to perform roof repairs and an employee of the contractor fell into a skylight; discussing Sections 343 and 343A; noting the employee knew of the skylights on the roof and their attendant dangers, the employee fell into a skylight despite his knowledge and appreciation of the risks, and that Knauf could not have anticipated such events given the comparable knowledge of the parties; and holding there was no triable issue of fact regarding Knauf's liability and that the trial court properly granted Knauf summary judgment) (citing *Zawacki*, 750 N.E.2d at 415-416 (discussing Sections 343 and 343A and noting that the landowner's comparative knowledge was no greater than that of an employee who worked for an independent contractor hired to perform repair work on its property); *Ozinga,* 676 N.E.2d at 386 (discussing Sections 343 and 343A and observing a truck driver was employed by an independent contractor to remove fly ash from a landowner's property, that the employee fell on fly ash, and that the landowner's comparative knowledge was no greater than that of the employee and the landowner could not have informed the employee of any facts of which he was not already aware)); *Bethlehem Steel Corp. v. Lohman*, 661 N.E.2d 554, 558 (Ind. Ct. App. 1995) (noting that the premises owner established there was no evidence of a breach of duty, it is appropriate to

consider the comparative knowledge of the landowner and invitee, and the contractor's employee was in a better position to discover any defects in a crane or the method of cleaning the engine).

Further, we cannot conclude that Fall Creek retained control or a right of supervision over the manner in which Waste Management performed its work at the time the accident occurred to a degree sufficient to subject it to liability. *See* RESTATEMENT (SECOND) OF TORTS § 414, § 414, cmt. c. Ricky testified that, on the day of the accident, "I went up and got the first one" and "was pushing it down to the truck" and, "[w]hile I was still holding onto it, . . . another one . . . came rolling . . . and smashed my hand." Appellant's Appendix, Volume 3, at 39. The designated evidence demonstrates that Ricky had the opportunity to take any necessary safety precautions and, at a minimum, that Fall Creek did not maintain control of the work at the time the accident occurred. *See Pelak*, 831 N.E.2d at 773 n.8 (finding the designated evidence did not demonstrate the premises owner had sufficient control over the workplace to subject it to potential liability); *Zawacki*, 750 N.E.2d at 412 (holding the work site was under the control of the contractor at the time the work was performed and the time of the accident); *Bethlehem Steel*, 661 N.E.2d at 557-558 (noting that, while the premises owner maintained some control as to the timing of repair work and the physical location of the cranes, it did not exercise any control over the actual manner or means by which the contractor repaired and maintained the cranes, and affirming summary judgment in favor

of the premises owner).[5]  Also, even assuming Fall Creek had retained control of the premises to a sufficient degree, as noted the danger presented by the containers was known and obvious to Ricky and Fall Creek did not have knowledge of any danger that Ricky did not possess and could not have informed him of any facts of which he was not already aware.  The trial court did not err in entering summary judgment in favor of Fall Creek.

## Conclusion

[27]  For the foregoing reasons, we affirm the entry of summary judgment in favor of Fall Creek and against the Bakers.

[28]  Affirmed.

Robb, J., and Mathias, J., concur.

---

[5] The Bakers cite to *Huffman v. Dexter Axle Co.*, 990 N.E.2d 947 (Ind. Ct. App. 2013), and *Beta Steel v. Rust*, 830 N.E.2d 62 (Ind. Ct. App. 2006).  In *Huffman*, an employee of trucking company died when a bundle of axles which had not been strapped or secured to a flatbed trailer fell.  990 N.E.2d at 951.  The premises owner argued it was not in control of its property at the time of the accident because it was not open for business, but the designated evidence did not show the premises owner had relinquished control of its property to the employee or the trucking company, and thus we found that the premises owner did not establish it did not owe the employee a duty as a matter of law.  *Id.* at 953.  In *Beta Steel*, the designated evidence showed that the premises owner had complete control over the design and installation of a faulty electrical control cabinet that allegedly caused the victim's death.  830 N.E.2d at 71.  Here, the designated evidence does not demonstrate that Fall Creek exercised or retained sufficient control or the type of control that the premises owners in *Huffman* and *Beta Steel* exercised or retained.